OPINION
{¶ 1} Defendant-appellant, Michael Woodland, appeals from a Belmont County Common Pleas Court, Domestic Relations Division decision granting a divorce to appellant and plaintiff-appellee, Trina Woodland.
 {¶ 2} The parties were married on February 13, 1982. They share two children. Appellant filed a complaint for divorce on March 17, 2004. Appellee filed an answer demanding that the court establish "an equitable distribution of property and liabilities, temporary and permanent allocation of parental rights and responsibilities including, but not limited to, orders of child support, tax exemption, insurance benefits and for such other and further relief to which Defendant may be entitled."
 {¶ 3} The case proceeded to trial on February 23, 2005. A magistrate entered a decree of divorce ordering, among other things: (1) appellant is to pay appellee $300 per month in spousal support; (2) appellee is to be awarded the marital house, provided that she "make a good faith effort to refinance the house within the next 12 months so as to remove Michael's name from the mortgage;" and (3) the disputed personal property is to be distributed by lottery. Appellant filed objections to the magistrate's decision, which the trial court subsequently overruled. The court adopted the magistrate's decision and entered judgment on February 6, 2006. Appellant filed this timely notice of appeal on March 3, 2006.
 {¶ 4} Appellant raises four assignments of error, the first of which states:
 {¶ 5} "THE TRIAL COURT LACKS JURISDICTION TO AWARD SPOUSAL SUPPORT WHEN NO SPECIFIC REQUEST WAS MADE."
 {¶ 6} Appellant argues that, pursuant to R.C. 3105.18(B), the trial court lacked jurisdiction to award spousal support because appellee did not specifically request spousal support. R.C. 3105.18(B) provides in part: "In divorce and legal separation proceedings, upon the request ofeither party and after the court determines the division or disbursement of property * * *, the court of common pleas may award reasonable spousal support to either party." (Emphasis added). *Page 2 
Appellant asserts R.C. 3105.18(B)'s language precludes a party from receiving spousal support unless he or she specifically requests it.
 {¶ 7} Appellee did not request spousal support in her answer. And the magistrate acknowledged that spousal support was never mentioned at the hearing. (Tr. 235). In his decision, the magistrate stated that "[t]here was not a lot of testimony directed especially to spousal support as a separate issue." Therefore, appellant argues that he had no reason to believe that spousal support was an issue. Appellant contends that had he been aware that spousal support was an issue, he would have pursued further discovery, directed cross examination of appellee to that issue, and possibly called further witnesses.
 {¶ 8} For support, appellant cites to Vincent v. Vincent (Nov. 6, 1991), 9th Dist. No. 15016. In Vincent, the wife made no specific request for spousal support and even stated at the hearing that she was not seeking spousal support. Nonetheless, the trial court awarded her spousal support in the form of ordering the husband to pay the wife a sum of money as his share of the marital debts as spousal support. The court found that the wife was not entitled to spousal support, reasoning:
 {¶ 9} "Prior to the amending of R.C. 3105.18(B) there was no requirement that spousal support be specifically requested in order for it to be awarded. McLaughlin v. McLaughlin (1986), 30 Ohio App.3d 242,243. The new language of R.C. 3105.18(B) however, expressly requires that spousal support be requested before it is awarded. Finding nothing to the contrary, we must follow the plain language of the statute. Wife made no request for spousal support (called alimony by the parties). At the hearing she specifically stated that she was not seeking `alimony' (spousal support)." Id.
 {¶ 10} In a subsequent case, the Eleventh District followedVincent in determining that the appellant husband waived his right to spousal support. Mauser v. Mauser (July 20, 2001), 11th Dist. No. 2000-P-0039. In Mauser, the husband made a general claim for relief in his answer and counterclaim, but did not specifically request spousal support. Further, the husband waived his right to spousal support in *Page 3 
a prenuptial agreement. The court held that because the appellant did not specifically request spousal support, he had effectively waived the claim.
 {¶ 11} Appellant analogizes Vincent and Mauser to the case at bar. Appellant contends that here, like in Vincent and Mauser, appellee did not specifically request spousal support. Further, appellant asserts that the court in Mauser made it clear that a general request for relief is not sufficient to satisfy the R.C. 3105.18(B) requirement. Therefore, although appellee requested other and further relief to which she may be entitled, appellant argues that this request was not specific enough to allow for an award of spousal support.
 {¶ 12} In response, appellee asserts that R.C. 3105.18(B) does not state the required form of the request for spousal relief, nor does the statute stipulate that the request be specific. Thus, appellee claims that the request in her answer "for such other and further relief to which Defendant may be entitled" was sufficient to allow for an award of spousal support.
 {¶ 13} For support, appellee cites to Phillips v. Phillips (May 11, 1994), 2d Dist. No. 14199. In Phillips, the wife asked for "such other relief to which (wife) may be entitled" in her complaint, and specifically sought temporary spousal support in her affidavit, which the court awarded. After the court's decision was filed, the husband did not object to the award of spousal support. On appeal, however, the husband argued that the court should not have awarded spousal support because the wife never specifically requested it. Affirming the trial court's award of support, the appellate court stated:
 {¶ 14} "In this case, neither the complaint nor the amended complaint specifically requested spousal support. However, both complaints prayed for `such other relief to which (wife) may be entitled . . . ` and wife's original affidavit of income, expenses, etc., specifically sought temporary spousal support which was ordered. Furthermore, husband interposed no objection to wife's testimony related to her anticipated living expenses. Finally, after the trial court filed its decision, husband filed objections to the proposed decree prepared by wife's counsel, but expressed no *Page 4 
objection to the award of spousal support. Although objections at trial and post-decision were not necessary to preserve for appellate review of the propriety of the award of spousal support, we do think that lack of objection at those stages of the proceedings demonstrates that husband was aware that spousal support was an issue, and that he was not misled and thus not prejudiced by the lack of a more specific request for spousal support." Id.
 {¶ 15} In another case, the Third District determined that the husband's general request for relief "was sufficient to satisfy the requirements of R.C. 3105.18(B)." Riegel v. Riegel (Sept. 30, 1998), 3d Dist. No. 14-98-06. In Riegel, the husband made no specific request for spousal support, although he asked for "support according to the law * * * and such other relief as the Court deems just and equitable." The trial court awarded the husband spousal support.
 {¶ 16} On appeal, the court relied on Phillips as holding that a general request for relief is sufficient to satisfy the requirements of R.C. 3105.18(B). Id. The court further reasoned the Ohio Supreme Court has held that a trial court acquires subject matter jurisdiction to award spousal support and make a division of marital assets when either party files a complaint for divorce and for an equitable division of assets. Id., citing Bolinger v. Bolinger (1990), 49 Ohio St.3d 120,551 N.E.2d 157. However, Bolinger was decided before R.C. 3105.18(B) was amended. Prior to the amendment, a demand for spousal support was not a prerequisite to the granting of support under R.C. 3105.18. Id. In 1991, the Legislature amended R.C. 3105.18(B) to include the provision that the trial court may award spousal support "upon the request of eitherparty." Id. (Emphasis added). The court in Riegel stated that even though the spousal support statute has since been amended, the rationale of Bolinger still applied. Id.
 {¶ 17} The courts are split on this issue. In Vincent andMauser, the Ninth and Eleventh Districts did not grant spousal support when no specific request was made. Conversely, in Phillips andRiegel, the Second and Third Districts granted spousal support based on a request for general relief. *Page 5 
 {¶ 18} Although the facts of this case are not completely analogous to the facts of Vincent and Mauser, we find the law is still applicable to the case at bar. The decision in Vincent did not hinge on the fact that the wife stated that she was not seeking spousal support. The court inVincent clearly stated that the language of R.C. 3105.18(B) "expressly requires that spousal support be requested before it is awarded." Likewise, the decision in Mauser did not turn on the fact that the husband waived his right to spousal support in a prenuptial agreement. The court in Mauser held that even though the husband made a general claim for relief, he did not specifically request spousal support, and therefore effectively waived his right to such a claim.
 {¶ 19} In contrast, the facts of Phillips are distinguishable from the case at bar. In Phillips, the wife sought temporary spousal support in her affidavit, which was granted. The court found that the husband demonstrated that he was aware that spousal support was an issue because he did not object to the court's decision to award spousal support. Here, there was no mention in the record of temporary or permanent spousal support until the magistrate's decision. Although appellee contends that the parties agreed to mortgage payments in lieu of spousal support up until the hearing, she admits there is nothing in the record to support this assertion. Further, appellant objected to the court's decision to award spousal support. Thus, it appears appellant was not aware that spousal support was an issue at trial, and was therefore not afforded an opportunity to present evidence to support his case with respect to spousal support.
 {¶ 20} The court in Riegel relied upon Phillips and Bolinger in reaching its conclusion. However, Bolinger was decided before R.C.3105.18 was amended, and therefore is not applicable. Further,Phillips did not explicitly hold that a claim for general relief is sufficient to award spousal support in all cases. The court inPhillips focused on the fact that the husband should have known that spousal support was being sought, and not on the fact that the wife made a general request for relief. Therefore, we do not agree withRiegel's reasoning. *Page 6 
 {¶ 21} Thus, when only a general request for relief, and not a specific request for spousal support is made, and the opposing party is unaware that spousal support is being sought, the trial court lacks jurisdiction to determine an award of spousal support. In the instant case, appellee made a general request for relief, and there was no mention of spousal support at the hearing. Therefore, the court lacked jurisdiction to award spousal support.
 {¶ 22} Given the fact that spousal support was not specifically requested and appellant was unaware that spousal support was an issue at trial, the trial court lacked jurisdiction to award spousal support. Hence, appellant's first assignment of error has merit.
 {¶ 23} Appellant's second assignment of error states:
 {¶ 24} "THE TRIAL COURT COMMITS REVERSIBLE ERROR IN AWARDING SPOUSAL SUPPORT WITHOUT CONSIDERATION OF ALL OF THE FACTORS SET FORTH IN OHIO REVISED CODE SECTION 3105.18."
 {¶ 25} Given our resolution of appellant's first assignment of error, his second assignment of error is moot.
 {¶ 26} Appellant's third assignment of error states:
 {¶ 27} "WHERE A PARTY PROVES BY CLEAR AND CONVINCING EVIDENCE THAT CERTAIN ASSETS ARE HIS SEPARATE PROPERTY THOSE ASSETS MUST BE AWARDED TO HIM PURSUANT TO OHIO REVISED CODE SECTION 3105.171."
 {¶ 28} An appellate court will not reverse a trial court's characterization of property as separate or marital absent an abuse of discretion. Peck v. Peck (1994), 96 Ohio App.3d 731, 734,645 N.E.2d 1300. Abuse of discretion connotes more than an error of law or judgment; it implies that the court's attitude was unreasonable, arbitrary, or unconscionable. Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219, 450 N.E.2d 1140. Our review of a trial court's classification of property as marital or separate is based on whether the determination is supported by the manifest weight of the evidence.James v. James (1995), 101 Ohio App.3d 668, 684, 656 N .E.2d *Page 7 
399. We will uphold the findings of a trial court where the record contains some competent evidence to support those findings. Fletcher v.Fletcher (1994), 68 Ohio St.3d 464, 468, 628 N.E.2d 1343.
 {¶ 29} In a divorce action, the trial court must determine what property is marital and what property is separate. R.C. 3105.171(B). Upon making its determination, the court shall divide the marital property equitably between the spouses and disburse a spouse's separate property to that spouse. R.C. 3105.171(C)(D). Marital property includes "[a]ll real and personal property that currently is owned by either or both of the spouses, * * * that was acquired by either or both of the spouses during the marriage." R.C. 3105.171(A)(3)(a)(i). Separate property includes all real and personal property that the court finds to be "an inheritance by one spouse by bequest, devise, or descent during the course of the marriage," as well as "[a]ny gift of any real or personal property or of an interest in real or personal property that is made after the date of the marriage and that is proven by clear and convincing evidence to have been given to only one spouse." R.C.3105.171(A)(6)(a)(1)(i) and (vii).
 {¶ 30} Appellant admitted a list of personal property items into evidence that he claimed as his separate property. (Pt. Ex. 18). Appellant claimed the items were separate because he either inherited the items from his father or the items were given to him as gifts.
 {¶ 31} Appellee, on the other hand, disagreed that several of the items on appellant's list were separate property. Appellee checked off each item on appellant's list that she considered to be marital, and admitted the list into evidence. (Def. Ex. B).
 {¶ 32} The magistrate awarded appellant all of the personal property items on his list that appellee did not check off as being marital property. The undisputed separate property awarded to appellant made up the majority of appellant's list. The remaining items were disputed. The parties could not agree as to whether the remaining items were separate property or marital property. *Page 8 
 {¶ 33} Based on the testimony and evidence presented, the magistrate awarded one disputed item, an above-ground pool, to appellant. Appellant produced evidence to prove that he bartered for the pool by trading a car that he had inherited from his father. The magistrate, therefore, concluded that the pool was appellant's separate personal property. The magistrate ordered the remaining disputed items to be allotted equally by lottery.
 {¶ 34} Appellant asserts that the court erred in not granting him all of the items that he listed as separate property. Appellant claims that there was no evidence to contradict any of his testimony that the listed items were separate property.
 {¶ 35} However, contrary to appellant's assertions, appellee admitted evidence that contradicted appellant's claim. Appellee checked off the items on appellant's list that she considered to be marital, and admitted her list into evidence. Aside from the evidence concerning the above-ground pool, appellant did not produce any evidence to prove his assertions. Therefore, the only evidence concerning whether the remaining disputed items were separate or marital property was the contradicting testimony of appellant and appellee and the self-serving item lists submitted by each party.
 {¶ 36} As an equitable solution, the magistrate ordered the remaining disputed items to be equally distributed by lottery. The magistrate apparently concluded that appellant failed to show by clear and convincing evidence that the remaining items were separate property. The record reflects this conclusion, given that appellant did not offer any evidence other than contradicted testimony and a self-serving item list. Therefore, the magistrate did not abuse his discretion in ordering that the property be equally allotted. Accordingly, appellant's third assignment of error is without merit.
 {¶ 37} Appellant's fourth assignment of error states:
 {¶ 38} "A TRIAL COURT SHOULD ATTEMPT TO DISENTANGLE THE PARTIES ECONOMIC PARTNERSHIP SO AS TO CREATE A CONCLUSION AND FINALITY TO THEIR MARRIAGE."
 {¶ 39} Appellant and appellee agreed that the marital home was to be *Page 9 
awarded to appellee. However, appellant asked that the court order appellee to refinance the home so as to remove his name from the mortgage or to sell the home. In accordance with this agreement, the magistrate awarded the house to appellee, provided that she "make a good faith effort to refinance the house within the next 12 months so as to remove Michael's name from the mortgage." The magistrate also stated that appellee was to indemnify appellant "and to save and hold him harmless for any further mortgage payments, expenses, or other liabilities on the home."
 {¶ 40} Appellant asserts that the magistrate's decision was not sufficient to disentangle the parties' economic partnership. The Ohio Supreme Court has recommended that "trial courts, when circumstances permit, should strive to resolve the issues between the parties so as to disassociate the parties from one another or at least minimize their economic partnership." Hoyt v. Hoyt (1990), 53 Ohio St.3d 177, 182,559 N.E.2d 1292. Therefore, the Court stated that trial courts "should attempt to preserve the pension or retirement asset in order that each party can procure the most benefit, and should attempt to disentangle the parties' economic partnership so as to create a conclusion and finality to their marriage." Id. at paragraph two of the syllabus.
 {¶ 41} Appellant contends that the magistrate should haverequired appellee to refinance the home, instead of ordering that she make a good faith effort to refinance the home. Appellant argues that there is no objective basis to determine what a good faith effort is nor is there any indication as to what happens in the event that appellee fails to make that effort. Appellant further argues that there is nothing in the magistrate's decision that addresses what happens if appellee makes a good faith effort to refinance the home, but that attempt is unsuccessful. Therefore, appellant asserts that the magistrate failed to disentangle the parties' economic partnership. As a result, appellant argues that the contingent liability not only exposes him to risk if appellee does not refinance and fails to make timely mortgage payments, but the liability could have a serious impact upon his ability to obtain financing to purchase his own home. *Page 10 
 {¶ 42} The magistrate's order that appellee make a good faith effort to refinance the marital home within 12 months was not unreasonable, unconscionable, or arbitrary. However, the magistrate did not provide an alternative order in the event that appellee's good faith effort to refinance is unsuccessful. If appellee's good faith effort to refinance is unsuccessful, the parties' economic partnership would seem to remain entangled for the remaining life of the mortgage.
 {¶ 43} But the magistrate made sure to also state that appellee was to, "indemnify * * * [appellant] and to save and hold him harmless for any further mortgage payments, expenses, or other liabilities on the home." This language disentangles appellant from the mortgage on the marital home whether or not appellee is able to refinance within 12 months. And if appellee does not comply with the court's order, appellant will be able to bring a contempt action against her to force her compliance.
 {¶ 44} Given the other language the court included right after instructing appellee to make a good faith effort to refinance, i.e., ordering appellee to indemnify appellant and hold him harmless for any further mortgage payments, expenses, or other liabilities on the house, the court's intent was to relieve appellant from all future expenses of any kind that have to do with the house, including the mortgage. Thus, we cannot conclude that it was an abuse of discretion to require appellee to use a "good faith effort" to refinance the home. Accordingly, appellant's fourth assignment of error is without merit.
 {¶ 45} For the reasons stated above, the trial court's judgment is hereby reversed as to the award of spousal support. The spousal support award is vacated. The trial court's judgment is affirmed in all other respects.
Waite, J., concurs.
DeGenaro, P.J. dissents; see dissenting opinion.