[Cite as *Parker v. Parker*, 2017-Ohio-78.]

STATE OF OHIO      )
                    )ss:
COUNTY OF SUMMIT    )

IN THE COURT OF APPEALS
NINTH JUDICIAL DISTRICT

JON G. PARKER

    Appellee

v.

PAMELA A. PARKER

    Appellant

C.A. No.     28189

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.    2011-12-3645

DECISION AND JOURNAL ENTRY

Dated: January 11, 2017

WHITMORE, Presiding Judge.

{¶1} Appellant, Jon Parker ("Husband"), appeals a decree of divorce entered by the Summit County Court of Common Pleas, Domestic Relations Division. For the following reasons, this Court affirms in part and reverses in part.

I.

{¶2} Jon and Pamela ("Wife") Parker married in 1995 and have three children. In 2011, Husband filed a complaint for divorce. Wife subsequently counterclaimed for divorce. Following a hearing, the trial court entered a decree of divorce in 2014. Husband attempted to appeal it, but this Court determined that the decree was not final and appealable. We also dismissed a second attempted appeal for lack of jurisdiction. In March 2016, the trial court reissued the decree with corrections in accordance with our previous decisions. Husband has appealed, assigning three errors.

II.

ASSIGNMENT OF ERROR I

THE TRIAL COURT ERRED IN ITS FINDINGS AND ORDERS THAT JON
HAD NOT TRACED ANY OF HIS SEPARATE PROPERTY GIFTED TO HIM
BY HIS FATHER AND DISTRIBUTED TO HIM FROM HIS FATHER'S
TRUST RESULTING IN THOSE FUNDS BEING CONSIDERED MARITAL
ASSETS SUBJECT TO EQUAL DIVISION.

{¶3}    In his first assignment of error, Husband argues that the trial court incorrectly found that two assets that grew out of gifts he received from his father were not his separate property under R.C. 3105.171(A)(6).  He notes that, under R.C. 3105.171, the definition of separate property includes "[a]n inheritance by one spouse by bequest, devise, or descent during the course of the marriage" and "[a]ny gift of any real or personal property * * * that is made after the date of the marriage and that is proven by clear and convincing evidence to have been given to only one spouse."  R.C. 3105.171(A)(6)(a)(i), (vii).  Husband also notes that, under R.C. 3105.171(A)(6)(b), the fact that some of the money he received from his father may have been commingled with martial property does not destroy its identity as separate property because its source is traceable.

{¶4}    "The classification of property as marital or separate is a question of fact that this Court reviews under a civil manifest weight standard."  *Fetzer v. Fetzer*, 9th Dist. Wayne No. 12CA0036, 2014-Ohio-747, ¶ 21, quoting *Hahn v. Hahn*, 9th Dist. Medina No. 11CA0064-M, 2012-Ohio-2001, ¶ 20.  When reviewing the manifest weight of the evidence:

> The [reviewing] court * * * weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new trial ordered.

(Alterations sic) (Internal quotations omitted.) *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 20. Regarding traceability, "[t]he party seeking to have a particular asset classified as separate property has the burden of proof, by a preponderance of the evidence, to trace the asset to separate property." *Fetzer* at ¶ 24, quoting *Eikenberry v. Eikenberry*, 9th Dist. Wayne No. 09CA0035, 2010-Ohio-2944, ¶ 19.

{¶5} According to Husband, in 2000 his father began giving him $800.00 a month to purchase annuities in his children's names. Husband testified that his father would generally give him $800.00 in cash, which he would deliver to a secretary at his place of business who then paid the annuity company. Other times, however, his father would give him a check for the $800.00. Husband contends that, at trial, he presented the court with a series of checks that had been issued to him from his father's living trust. According to Husband, because of the passage of time, those checks are the only record of the money his father gifted him. He notes, however, that his brother also testified about the fact that their father began giving money to Husband beginning in the late 1990s or early 2000s. Husband also contends that he did not earn enough to pay for the annuities out of his own income.

{¶6} The trial court found that Husband opened an insurance policy for each of the children in November 2001 and that the total monthly premium was $840.00. It found that Husband cashed in all three policies in April 2011 and received $89,671.96. He later deposited the funds into an account that he created in his sister's name. After filing for divorce, he placed the funds that remained in that account into his attorney's escrow account. The court found that, of the checks presented at trial that Husband's father wrote from December 2001 until his death in 2008, $3,550 were payable to Husband and $11,570 were payable to cash. The court found, however, that there was no evidence that Husband received any of the "cash" monies or that he

used the $3,550 that was payable to him to pay his children's life insurance premiums. It also found that Husband's average income during those years was $76,829.59 and that the parties' total household income was $110,768.89, which was "[c]learly * * * sufficient household income to make these [insurance] payments."

{¶7} At trial, Husband referred to the checks that his father wrote as exhibit 38A. They were not included in the parties' exhibit list, however, or made part of the appellate record. The only evidence in the record that supports Husband's contention that his father gave him monthly gifts is his own testimony, which the trial court did not find credible. The trial court was in the best position to evaluate Husband's credibility. *See Sandhu v. Sandhu*, 9th Dist. Summit No. 27207, 2015-Ohio-90, ¶ 15. Upon review of the record, we cannot say that the trial court's finding that Husband failed to prove that the funds he placed in his attorney's escrow account could be traced to gifts from his father is against the manifest weight of the evidence.

{¶8} Husband also argues that the funds in his Charles Schwab One account are his separate property. According to Husband, in 2009, his brother paid him his share of the proceeds of his father's life insurance policy, which was $15,599.52. Husband testified that, although he originally deposited the funds in a different account, he transferred them to his Charles Schwab One account in 2011. Husband alleges that, because the only funds that were in the Charles Schwab One account at the time of trial came from his inheritance, they are his separate property.

{¶9} The trial court found that Husband deposited $14,713.14 of the inheritance funds into a First Merit savings account in 2009. It found that, between May 2009 and January 2010, $8,390.67 of marital money was also deposited into that account. The court found that $14,839.50 was later withdrawn from the savings account and that there was no indication

whether the money being withdrawn was Husband's inheritance money or marital money. There was also no evidence about the purpose of the withdrawals. The court found there was no documentation that Husband transferred funds that were his separate property from the First Merit savings account to the Charles Schwab One account. It, therefore, concluded that Husband failed to prove that the money in the Charles Schwab One account originally came from his father's life insurance policy.

{¶10} Upon review of the record, there is nothing that verifies Husband's testimony that the money that was in the Charles Schwab One account at the time of trial came from the proceeds of Husband's father's life insurance policy. Because the trial court was in the best position to assess Husband's credibility, we cannot say that the court's finding regarding the Charles Schwab One account was against the manifest weight of the evidence. Husband's first assignment of error is overruled.

## ASSIGNMENT OF ERROR II

> THE TRIAL COURT ERRED AS A MATTER OF LAW AND ABUSED ITS DISCRETION IN ISSUING AN AWARD OF SPOUSAL SUPPORT TO PAMELA.

{¶11} In his second assignment of error, Husband argues that the trial court incorrectly awarded spousal support to Wife because she did not request spousal support in her counterclaim. R.C. 3105.18(B) provides that, "[i]n divorce and legal separation proceedings, upon the request of either party * * *, the court of common pleas may award reasonable spousal support to either party."

{¶12} Although R.C. 3105.18(B) indicates that spousal support may be awarded upon the request of either party, it does not "prescribe the form of [the] request." *Phillips v. Phillips*. 2d Dist. Montgomery No. 14199, 1994 WL 179950, *3 (May 11, 1994); *Patti v. Patti*, 11th Dist.

Portage No. 2013-P-0048, 2014-Ohio-1156, ¶ 15 ("[T]he statute does not state how a request for spousal support is to be raised[.]").  Other districts that have considered this issue have determined that spousal support does not have to be specifically requested in the complaint or answer as long as it is specifically sought somewhere in the record.  *See Phillips* at \*3. (explaining that Wife specifically requested temporary spousal support and Husband did not object to Wife's inclusion of spousal support in her proposed decree); *Woodland v. Woodland*, 7th Dist. Belmont No. 06-BE-9, 2007-Ohio-3503, ¶ 21 (concluding that trial court could not award spousal support if the opposing party was unaware it was being sought) ; *Williams v. Williams*, 5th Dist. Stark No. 2013CA00107, 2014-Ohio-1044, ¶ 28 (concluding that trial court could award spousal support when the issue of temporary spousal support had been highly contested and Wife made an oral request for spousal support at trial).

{¶13} This Court has held that, since being amended in 1990, R.C. 3105.18(B) "expressly requires that spousal support be requested before it is awarded." *Vincent v. Vincent*, 9th Dist. Summit No. 15016, 1991 WL 231563, \*2 (Nov. 6, 1991).  In *Vincent*, this Court concluded that the trial court incorrectly awarded spousal support to Ms. Vincent because "we must follow the plain language of [R.C. 3105.18(B)]" and "[she] made no request for spousal support." *Id*.

{¶14} Wife did not make a specific request for spousal support in her answer and counterclaim.  In her pretrial statement, Wife indicated that, regarding spousal support, the only issue was "[w]hether this Court should retain jurisdiction over this issue."  During trial, neither party mentioned spousal support, let alone made a request for it.  Finally, in her post-trial brief, Wife made no mention of spousal support.

**{¶15}** Wife argues that the trial court was allowed to award her spousal support because in her answer and counterclaim she requested "such further relief [as] this Court deems just." In *Vincent*, this Court explained that, before R.C. 3105.18 was amended in 1990, "there was no requirement that spousal support be specifically requested in order for it to be awarded." *Id*. Now, however, parties must expressly request spousal support in order for a court to award it. *Id*. Wife's general claim for relief is insufficient under R.C. 3105.18(B). *Mauser v. Mauser*, 11th Dist. Portage No. 2000-P-0039, 2001 WL 822678, *4-5 (July 20, 2001) (concluding that general claim for relief was insufficient to authorize court to award spousal support); *Woodland*, 2007-Ohio-3503, at ¶ 21 (same).

**{¶16}** Wife also argues that she specifically requested spousal support in "a motion she filed on April 19, 2012." There is no such motion in the record. The only document that Wife filed on April 19, 2012, was a "Notice of Service of Response to Interrogatories and Request for Production of Documents," which is a one-paragraph document that indicates that Wife served her responses to Husband's discovery requests on April 6, 2012. It does not include a request for spousal support.

**{¶17}** Upon review of the record, Wife did not make an express request for spousal support at any point during the course of the proceedings. In fact, in her only mention of spousal support, Wife indicated that the sole issue for trial was whether the trial court should retain jurisdiction over the issue so that it could be considered at a later date. We, therefore, conclude that the trial court did not have authority to award Wife spousal support in its decree. *See* R.C. 3105.18(B). Husband's second assignment of error is sustained.

ASSIGNMENT OF ERROR III

> THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN ITS
> FINDING THAT JON HAD PURPOSELY AND SIGNIFICANTLY

DIMINISHED HIS GROSS ANNUAL INCOME TO AVOID THE PAYMENT OF SPOUSAL SUPPORT, THE FURTHER FINDING THAT JON'S EARNING ABILITY IS $52,000 PER YEAR, AND THE RESULTING ORDER OBLIGATING JON TO PAY SPOUSAL SUPPORT TO PAMELA IN THE AMOUNT OF $600.00 PER MONTH FOR 70 CONSECUTIVE MONTHS.

{¶18} In his third assignment of error, Husband argues that the trial court incorrectly calculated the amount of spousal support that he must pay. Based on our resolution of Husband's second assignment of error, we conclude that Husband's third assignment of error is moot, and we decline to address it. *See* App.R. 12(A)(1)(c).

III.

{¶19} Husband's first assignment of error is overruled. His second assignment of error is sustained. His third assignment of error is moot. The judgment of the Summit County Court of Common Pleas, Domestic Relations Division, is affirmed in part and reversed in part, and this matter is remanded for further proceedings consistent with this decision.

Judgment affirmed in part,
and reversed in part,
and cause remanded.

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is

instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed equally to both parties.

_____

BETH WHITMORE
FOR THE COURT

HENSAL, J.
SCHAFER, J.
CONCUR.

APPEARANCES:

ARTHUR AXNER, Attorney at Law, for Appellant.

SUNNY M. SIMON, Attorney at Law, for Appellee.