[Cite as *Theriot v. Hetrick*, 2020-Ohio-6995.]

## COURT OF APPEALS OF OHIO

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| MICHELLE THERIOT, | : | |
| Plaintiff-Appellant, | : | No. 109364 |
| v. | : | |
| GERALD HETRICK, | : | |
| Defendant-Appellee. | : | |

JOURNAL ENTRY AND OPINION

**JUDGMENT:** REVERSED AND REMANDED
**RELEASED AND JOURNALIZED:** December 31, 2020

Civil Appeal from the Cuyahoga County Court of Common Pleas
Domestic Relations Division
Case No. DR-18-374260

*Appearances:*

Andrew J. Simon, *for appellant.*

Megan J. Corsi LLC and Megan J. Corsi, *for appellee.*

MARY J. BOYLE, P.J.:

{¶ 1} Plaintiff-appellant, Michelle Theriot, appeals the trial court's award of spousal support and division of property. She raises two assignments of error for our review:

1. In a divorce proceeding a trial court may not grant an award of spousal support nor an award of property when they are not requested in a properly filed pleading.

2. The trial court's finding that the $50,000 borrowed by appellant from the equity of her premarital home was marital property was against the weight of the evidence.

{¶ 2} Finding merit to both assignments of error, we reverse the trial court's judgment and remand with instructions for the trial court to issue an amended judgment of divorce consistent with this opinion.

## I. Procedural History and Factual Background

{¶ 3} In November 2018, Theriot downloaded and completed the standard complaint form for a divorce without children from the Cuyahoga County Domestic Relations Court website. She filed it pro se. She alleged that she and defendant-appellee, Gerald Hetrick, were married on November 25, 2017, and that no children were born as issue of the marriage. For the grounds for divorce, Theriot checked the boxes for incompatibility, gross neglect of duty, habitual drunkenness, and fraudulent marriage contract. She also checked the box that "Plaintiff and Defendant own real property located at" 26977 Cook Road in Olmsted Township, Ohio ("residence"). Theriot identified personal property acquired during the marriage that had not been divided, including security camera equipment, a TV wall mount, and a metal shelving unit. On the blank space for debts that "Plaintiff and Defendant" had, Theriot identified credit card debt used to pay Hetrick's overpayment of unemployment, Hetrick's premarital credit card debt that Theriot paid, and credit card debt for expenses related to Hetrick's son's funeral. Theriot

requested that she be granted a divorce from Hetrick, ownership of the residence, "an equitable division of personal property and/or debts," and any other relief the court finds equitable. Theriot also executed a waiver of legal counsel. The same day, the trial court entered a mandatory disclosure order pursuant to Loc.R. 14 of the Court of Common Pleas of Cuyahoga County, Domestic Relations Division, and mutual restraining orders pursuant to Loc.R. 24.[1]

{¶ 4} Hetrick, through counsel, filed an answer in which he admitted all allegations in the complaint except for (1) the grounds for divorce other than incompatibility, (2) the list of personal property other than that the parties owned personal property, and (3) the list of debts other than that the parties have debts. Hetrick requested that "the Complaint against him be dismissed and he go hence without day on such Complaint at Plaintiff's costs." Throughout the pretrial proceedings, Hetrick filed a financial disclosure statement with an affidavit of his property, income, and expenses. In the affidavit, Hetrick stated that Theriot owned the residence before the marriage.

{¶ 5} The trial court held a bench trial on July 31, 2019. Present at the trial were Theriot, Hetrick, and Hetrick's counsel. During opening statements, Theriot requested reimbursement for the money she spent to pay off Hetrick's premarital debt and to pay for his son's funeral. Hetrick's counsel requested spousal support and an equitable division of the marital property.

---

[1] Although the docket reflects that no service of the orders was made to Theriot, according to Loc.R. 14 and 24, she was "deemed served" with the orders "upon the filing of the complaint."

{¶ 6} Theriot testified to the expenses she incurred by supporting Hetrick during their marriage: she paid for their wedding and honeymoon, she paid higher utility bills while he lived in the residence while recovering from hip surgery, her insurance paid for his hip replacement, she bought him a new wardrobe, and she had a higher toilet installed at the residence for him. Theriot testified that when she went out of town for a few days, Hetrick leased "an expensive Ford F150 truck" and that he would not let her use or "ever touch." She explained that during the marriage, Hetrick would drink alcohol, become "very angry," and have "mood swings."

{¶ 7} On cross-examination, Theriot testified that she was starting her fourteenth year as a special education teacher for the North Olmsted City Schools. She agreed that her gross annual income for the 2018-2019 school year was $91,159 and that her salary for the 2019-2020 school year would be more than $91,000. Theriot stated that she participates in the State Teachers Retirement System ("STRS"), and she was a participant during the marriage. She explained that her divorce agreement with her previous husband provided that she would receive $78,000 per year for ten years when she turns 65, and that she was currently 60 years old. She stated that she added Hetrick to her health insurance policy when they were married, and she cancelled his health insurance on November 1, 2018, shortly after he moved out of the residence and removed her from his health savings account.

{¶ 8} Theriot testified that the residence was hers before the marriage, and she had a balance on a mortgage and equity line of credit through Third Federal Savings & Loan until the parties refinanced through Freedom Mortgage in August 2018 to perform updates on the residence. The trial court admitted Third Federal statements showing that when Theriot and Hetrick were married on November 25, 2017, the outstanding principal on the mortgage was $77,211.16, and the equity line of credit had a balance owed of $35,230.48. The Third Federal statements show that from November 2017 to August 2018, the outstanding principal on the mortgage was reduced to $72,034.11, and the balance owed on the equity line of credit was increased to $47,344.15.

{¶ 9} Theriot testified that in August 2018, she and Hetrick took out a mortgage of approximately $178,000 from Freedom Mortgage, paid off the Third Federal mortgage and equity line of credit, and had approximately $50,000 deposited into Theriot's bank account to update the residence. She testified that the plans to update the residence "fell apart" when Hetrick moved out in September 2018. In September, Theriot used $45,000 to open four certificates of deposit: three with $5,000 in each one, and one with $30,000. Theriot testified that she had been removing funds from the $30,000 CD to pay bills, and at the time of trial, the CD had a balance of $17,352. She explained that she was not aware of the trial court's November 6, 2019 mutual restraining order.

{¶ 10} Hetrick testified that he was married to Theriot on November 25, 2017, and that they were incompatible. He stated that he lost his job in June 2019

and had been unemployed since then. He explained that he received severance pay until July 2019 and for the two weeks before trial had been receiving unemployment payments of $443 per week. Hetrick testified that he pays $344 per month for his vehicle lease and cannot meet his monthly expenses of approximately $3,262 per month. He said that he has a checking account with a balance of approximately $100, and that he is over $9,000 in debt. He also testified that he has no retirement savings, life insurance policies, or health insurance. Hetrick requested that Theriot return to him security camera equipment, a television wall mount, a generator, and two metal shelves to him. In closing argument, Hetrick's counsel requested that Theriot pay Hetrick spousal support of $1,500 per month for six months, one half of the marital portion of Theriot's pension from the STRS, and an equitable division of the CDs.

{¶ 11} On August 12, 2019, the trial court entered a judgment granting each party a divorce from the other on the grounds of incompatibility, dissolving the marriage contract between them, dividing property, and awarding spousal support. The trial court found that the duration of the marriage was from November 25, 2017, to July 31, 2019. It ordered Theriot to return Hetrick's personal property and found that her payment to cover Hetrick's son's funeral was a gift. It further found that the $50,000 that Theriot had put most of into CDs to be marital property because "the $50,000.00 line of credit was executed by both parties in order to 'update' the home." The trial court therefore ordered Theriot to pay Hetrick $25,000. It further found that the STRS pension earned during the marriage was a marital asset and

ordered that Hetrick receive his one-half share of the pension earned during the marriage. The trial court also considered the factors in R.C. 3105.18(C) and ordered Theriot to pay spousal support to Hetrick in the amount of $1,500.00 per month for six months.

{¶ 12} On August 23, 2019, Theriot, through counsel, filed a request for findings of fact and conclusions of law pursuant to Civ.R. 52. On September 6, 2019, the trial court granted Theriot's motion and ordered each party to file proposed findings of fact and conclusions of law by September 20, 2019, which it later extended to November 1, 2019. On September 20, 2019, Theriot also filed a "Motion to Open Plaintiff's Case" to "present sufficient evidence to establish [the $50,000] to be her premarital funds," which the trial court denied.

{¶ 13} On December 18, 2019, after both parties filed their proposed findings of fact and conclusions of law, the trial court re-adopted its findings of fact and conclusions of law as stated in its August 12, 2019 judgment entry. The trial court explained that "[i]t appears that one or both parties disagrees with the conclusions reached; that is a separate question from whether [the] Court's conclusions were adequately stated." The trial court stated that the remedy for disagreeing with its conclusions is an appeal, not "a re-writing of the trial court's prior decision."

{¶ 14} On January 7, 2020, Theriot appealed the trial court's August 12, 2019 judgment "made final by" its December 18, 2019 judgment. In June 2020,

after the parties submitted their appellate briefs, we sua sponte ordered the parties to submit briefs regarding whether the appeal was timely, which they did.

## II.  Timeliness of Appeal

{¶ 15} Before reaching Theriot's assignments of error, we must first determine whether this appeal is timely.

{¶ 16} Pursuant to App.R. 4(B)(2)(d), in a civil case, if a party files a request for findings of fact and conclusions of law under Civ.R. 52, "if timely and appropriate," "then the time for filing a notice of appeal from the judgment or final order in question begins to run as to all parties when the trial court enters an order resolving" the findings of fact and conclusions of law.  To determine whether Theriot's request for findings of fact and conclusions of law was timely, we must consider Civ.R. 52 and 6(D).

{¶ 17} Civ.R. 52 states in relevant part:

When questions of fact are tried by the court without a jury, judgment may be general for the prevailing party unless one of the parties in writing requests otherwise before the entry of judgment pursuant to Civ.R. 58, or not later than seven days after the party filing the request has been given notice of the court's announcement of its decision, whichever is later, in which case, the court shall state in writing the findings of fact found separately from the conclusions of law.

{¶ 18} Civ.R. 6(D) provides in relevant part:

Whenever a party has the right or is required to do some act or take some proceedings within a prescribed period after the service of a notice or other document upon that party and the notice or paper is served upon that party by mail or commercial carrier service under Civ.R. 5(B)(2)(c) or (d), three days shall be added to the prescribed period.

**{¶ 19}** The trial court entered its judgment on August 12, 2019. The docket reflects that the trial court served Theriot with the judgment entry by regular mail on August 14. Pursuant to Civ.R. 52 and 6(D), Theriot had ten days from August 14 to file her request for findings of fact and conclusions of law. Theriot filed her request within this timeframe on August 23, and her request was therefore timely.

**{¶ 20}** We must next determine whether Theriot's request for findings of fact and conclusions of law was appropriate. In general, a request for findings of fact and conclusions of law is not "appropriate" pursuant to App.R. 4(B)(2) if the trial court incorporated the findings of fact and conclusions of law into its original judgment. *Besman v. Leventhal*, 8th Dist. Cuyahoga No. 104414, 2017-Ohio-464, ¶ 10 ("With findings of fact and conclusions of law having already been issued, [defendant's] subsequent motion for findings of fact and conclusions of law was superfluous. And being superfluous, the motion did not toll the running of the time for appeal."); *Bonnette v. Bonnette*, 9th Dist. Lorain No. 12CA010175, 2013-Ohio-981, ¶ 6 (finding that a motion for findings of fact and conclusion of law did not toll the time to appeal a divorce decree that already included separate findings of fact and conclusions of law). In both *Besman* and *Bonnette*, the trial courts denied the motions for findings of fact and conclusions of law because they were inappropriate. *Besman* at ¶ 1; *Bonnette* at ¶ 3.

**{¶ 21}** Here, however, the trial court granted Theriot's motion for findings of fact and conclusions of law, finding the motion to be "well taken." The trial court's judgment indicates that it considered Theriot's motion to be appropriate to

determine whether its conclusions were "adequately stated." This shows that Theriot's motion properly tolled the running of the time to appeal until the trial court's ruling on Theriot's motion on December 18, 2019. Theriot's notice of appeal filed on January 7, 2020, is therefore timely.

### III. Due Process

{¶ 22} In her first assignment of error, Theriot argues that the trial court erred when it awarded spousal support and divided property because Hetrick did not include such demands in a pleading. She contends that the trial court violated her right to due process when it awarded spousal support and divided property when Hetrick requested such relief for the first time at trial.

{¶ 23} We review a trial court's determination in domestic relations cases under an abuse-of-discretion standard. *Booth v. Booth*, 44 Ohio St.3d 142, 144, 541 N.E.2d 1028 (1989). "Abuse of discretion" has been defined as an attitude that is unreasonable, arbitrary, or unconscionable. *In re C.K.*, 2d Dist. Montgomery No. 25728, 2013-Ohio-4513, ¶ 13, citing *Huffman v. Hair Surgeon, Inc.*, 19 Ohio St.3d 83, 482 N.E.2d 1248 (1985). A decision is unreasonable if there is no sound reasoning process that would support that decision. *Id.*, citing *AAAA Ents., Inc. v. River Place Community Urban Redevelopment Corp.*, 50 Ohio St.3d 157, 553 N.E.2d 597 (1990).

{¶ 24} "The essence of procedural due process is the right to receive reasonable notice and a reasonable opportunity to be heard." *Sprouse v. Miller*, 4th Dist. Lawrence No. 07CA32, 2008-Ohio-4384, ¶ 13. "Due process of law implies, in

its most comprehensive sense, the right of the person affected to be heard, by testimony or otherwise, and to have the right of controverting, by proof, every material fact which bears on the question of right in the matter involved." *Williams v. Dollison*, 62 Ohio St.2d 297, 299, 405 N.E.2d 714 (1980). "'The right to a hearing embraces not only the right to present evidence, but also a reasonable opportunity to know the claims of the opposing party and to meet them.'" *Althof v. Ohio State Bd. of Psychology*, 10th Dist. Franklin No. 05AP-1169, 2007-Ohio-1010, ¶ 19, quoting *Gonzales v. United States*, 348 U.S. 407, 414, fn. 5, 75 S.Ct. 409, 99 L.Ed. 467 (1955), quoting *Morgan v. United States*, 304 U.S. 1, 18, 58 S.Ct. 773, 58 S.Ct. 999, 82 L.Ed. 1129 (1938). "The inquiry as to what constitutes due process depends on the facts of each case." *Huntington Natl. Bank v. 5777 Grant, LLC*, 2014-Ohio-5154, ¶ 16 (8th Dist.).

{¶ 25} The Rules of Civil Procedure are designed to "eliminate surprise" and to prevent "trial by ambush." *Jones v. Murphy*, 12 Ohio St.3d 84, 86, 465 N.E.2d 444 (1984); *Shumaker v. Oliver B. Cannon & Sons*, 28 Ohio St.3d 367, 371, 504 N.E.2d 44 (1986). Civ.R. 8 provides that "[a] pleading that sets forth a claim for relief * * * shall contain (1) a short and plain statement of the claim showing that the party is entitled to relief, and (2) a demand for judgment for the relief to which the party claims to be entitled." Hetrick's answer contained no demand for spousal support or for a division of property. Nor did Hetrick file a counterclaim demanding such relief. Based on the pleadings, Theriot had no notice that Hetrick was planning to request spousal support and property division at trial.

**{¶ 26}** As an initial matter, Hetrick did not need to request a division of property. R.C. 3105.171(B) provides:

> In divorce proceedings, the court shall, and in legal separation proceedings upon the request of either spouse, the court may, determine what constitutes marital property and what constitutes separate property. In either case, upon making such a determination, the court shall divide the marital and separate property equitably between the spouses, in accordance with this section. For the purposes of this section, the court has jurisdiction over all property, excluding the social security benefits of a spouse other than as set forth in division (F)(9) of this section, in which one or both spouses have an interest.

Pursuant to R.C. 3105.171(B), the trial court is required to divide property in divorce proceedings; no party needs to request it.

**{¶ 27}** However, R.C. 3105.18(B) specifically states that to receive spousal support, a party must request it. R.C. 3105.18(B) provides in relevant part:

> In divorce and legal separation proceedings, upon the request of either party and after the court determines the division or disbursement of property under section 3105.171 of the Revised Code, the court of common pleas may award reasonable spousal support to either party.

R.C. 3105.18(B) does not provide how a request for spousal support must be raised.

**{¶ 28}** General requests for relief in a pleading are insufficient to request spousal support pursuant to R.C. 3105.18(B). *Woodland v. Woodland*, 7th Dist. Belmont No. 06-BE-9, 2007-Ohio-3503, ¶ 21; *Mauser v. Mauser*, 11th Dist. Portage No. 2000-P-0039, 2001 Ohio App. LEXIS 3281, 11-12 (July 20, 2001). However, spousal support does not need to be requested at all in a pleading "as long as it is specifically sought somewhere in the record." *Parker v. Parker*, 9th Dist. Summit No. 28189, 2017-Ohio-78, ¶ 12.

{¶ 29} An oral request for spousal support made at trial can satisfy R.C. 3105.18(B) if the nonrequesting party was aware that spousal support would be an issue at trial. *See Williams v. Williams*, 5th Dist. Stark No. 2013CA00107, 2014-Ohio-1044, ¶ 28. In *Williams*, the wife had requested an award of spousal support in her complaint for divorce, which she later dismissed. *Id.* at ¶ 16. However, during cross-examination on the last day of trial, the wife testified that she was seeking an award of permanent spousal support. *Id.* The trial court found it had no jurisdiction to award the wife spousal support, but the Fifth District reversed. *Id.* at ¶ 28. The Fifth District reasoned that the issue of temporary spousal support had been "highly contested from the commencement of the action," and the wife's oral request for permanent spousal support at trial was likely not "surprising." *Id.*

{¶ 30} Therefore, the pertinent question here is whether Theriot was aware that spousal support was going to be an issue at trial. We find that there is nothing in the record to show that Theriot was or should have been aware. Unlike in *Williams*, temporary spousal support was not an issue before trial in this case. Hetrick contends that he requested spousal support during a pretrial proceeding on April 8, 2019, but this request is not in the record. According to the record before us, Hetrick requested spousal support for the first time orally during his opening statement at trial. Based on the record, Theriot had no notice before trial that Hetrick planned to raise the issue of spousal support, and she therefore had no reason to prepare evidence in opposition, or to hire an attorney to present such evidence on her behalf.

{¶ 31} Hetrick argues that Theriot should have been aware that spousal support would be an issue at trial because he subpoenaed Theriot's employer to obtain evidence regarding her income and because she did not object when he requested spousal support at trial. However, the subpoenas and any accompanying notices of service are not in the record. Furthermore, issuing a subpoena, without more, would not necessarily put Theriot on notice that spousal support would be an issue at trial. Although Theriot's lack of objection may be interpreted as a lack of surprise that spousal support was an issue, it is more likely a consequence of her pro se appearance at trial. We recognize that "a pro se litigant [] is presumed to have knowledge of the law and of correct legal procedure and is held to the same standard as all other litigants." *Kilroy v. B.H. Lakeshore Co.*, 111 Ohio App.3d 357, 363, 676 N.E.2d 171 (8th Dist.1996). However, under the circumstances in this case, we decline to interpret Theriot's lack of objections to mean that she had notice that Hetrick was planning to seek spousal support before he made his first explicit request at trial.

{¶ 32} Theriot had no notice going into trial that Hetrick would request and present evidence regarding spousal support. Under the circumstances, an award of spousal support violated Theriot's right to due process and was unreasonable.

{¶ 33} Accordingly, we find that the trial court abused its discretion in awarding Hetrick spousal support. We therefore sustain Theriot's first assignment of error as it relates to spousal support and vacate the trial court's award of spousal support.

## IV. Marital Property

{¶ 34} In her second assignment of error, Theriot argues that the trial court's finding that the $50,000 from Freedom Mortgage to update the residence was marital property was against the weight of the evidence. She maintains that the $50,000 came from her equity in the residence that she acquired prior to the date of the marriage, and it is her separate property according to R.C. 3105.171(A)(6)(a)(ii).

{¶ 35} In determining whether assets are marital or separate, the trial court is governed by R.C. 3105.171. Marital property generally includes all property acquired by either party during the marriage as well as the appreciation of separate property due to the labor, monetary, or in-kind contributions of either party during the marriage. R.C. 3105.171(A)(3)(a)(i) and (iii). Trial courts must divide marital property equitably between the spouses. R.C. 3105.171(B). Usually, this requires that marital property be divided equally. R.C. 3105.171(C)(1). "However, if the trial court determines that an equal division would produce an inequitable result, it must divide the property in a way it deems equitable." *O'Rourke v. O'Rourke*, 4th Dist. Scioto No. 08CA3253, 2010-Ohio-1243, ¶ 15; R.C. 3105.171(C)(1).

{¶ 36} Marital property does not include separate property. R.C. 3105.171(A)(3)(b). "Property that is acquired during the marriage is presumed to be marital property unless it can be shown to be separate." *Ockunzzi v. Ockunzzi*, 8th Dist. Cuyahoga No. 86785, 2006-Ohio-5741, ¶ 17. "Separate property" includes all real and personal property that was acquired by one spouse prior to the marriage

and any "passive income and appreciation acquired from separate property by one spouse during the marriage." R.C. 3105.171(A)(6)(a)(ii) and (iii). Separate property commingled with marital property remains as separate property unless it becomes no longer traceable. R.C. 3105.171(A)(6)(b). Thus, traceability becomes the focus in determining whether separate property has lost its character after being commingled with marital property. *Peck v. Peck*, 96 Ohio App.3d 731, 734, 645 N.E.2d 1300 (12th Dist.1994). The party seeking to establish an asset as separate property has the burden of proof, by a preponderance of the evidence, to trace the asset as separate property. *Hildebrand v. Hildebrand*, 5th Dist. Morrow No. 954, 2003-Ohio-3654, ¶ 11, citing *Zeefe v. Zeefe*, 125 Ohio App.3d 600, 614, 709 N.E.2d 208 (8th Dist.1998).

{¶ 37} Once a trial court has classified the property as either marital or separate, review of that determination is limited to the standard of manifest weight of the evidence. *Marcum v. Marcum*, 116 Ohio App.3d 606, 612, 688 N.E.2d 1085 (2d Dist.1996). "This standard of review is highly deferential and even 'some' evidence is sufficient to sustain the judgment and prevent a reversal." *Barkley v. Barkley*, 119 Ohio App.3d 155, 159, 694 N.E.2d 989 (4th Dist.1997). The manifest-weight standard in a civil case is the same as it is in a criminal case. *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, ¶ 17. In *Eastley*, the Ohio Supreme Court explained:

> Weight of the evidence concerns "the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the [factfinder] that the

party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief."

*Id.* at ¶ 12, quoting *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997).

{¶ 38} When conducting a manifest-weight review, this court "weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new trial ordered." *Thompkins* at ¶ 20.

{¶ 39} Here, Theriot purchased the residence before the marriage, and the outstanding principal on the mortgage at the time of marriage was approximately $77,000, with a balance owed on an equity line of credit of approximately $35,000. As real property acquired by one spouse prior to the date of the marriage, the residence and the equity in it accrued before the marriage was Theriot's separate property. R.C. 3105.171(A)(6)(a)(ii). Hetrick argues that the mortgage was reduced by $12,600 during the marriage. However, the Third Federal documents show that during the marriage, the balance of the mortgage was reduced by approximately $5,000 and the balance on the equity line of credit was increased by approximately $12,000. Instead of gaining marital equity in the property, they increased their marital debt by approximately $7,000. The residence and its premarital equity remained Theriot's separate property. R.C. 3105.171(A)(6)(a)(ii).

{¶ 40} In August 2018, the residence was refinanced through Freedom Mortgage with a mortgage of approximately $178,000. Hetrick contends that Theriot and Hetrick both signed the refinance documents, but the documents are not in the record. Regardless, despite the refinance, Theriot's premarital equity in the residence continued to be her separate property. *See Ockunzzi*, 2006-Ohio-5741, at ¶ 20 ("[T]he refinancing of a home after a marriage does not in any way convert separate property into marital property where the mortgage was not taken" to purchase the residence.).

{¶ 41} After the $178,000 was used to pay the balance of the mortgage and equity line of credit through Third Federal, approximately $50,000 was deposited into Theriot's account to update the residence. The $178,000 mortgage from Freedom Mortgage, including the $50,000 that went into Theriot's account, was based on the equity accrued in the residence, which was Theriot's separate property. The $50,000 was deposited directly into Theriot's account around the time that Hetrick moved out of the residence. Theriot used $45,000 to open CDs that are held in her name only. The $50,000 is traceable from Theriot's premarital equity in the residence. The $50,000 is therefore Theriot's separate property. R.C. 3105.171(A)(6)(b).

{¶ 42} This conclusion is consistent with the trial court's other property-division findings. The trial court did not determine that the residence was marital property and did not divide the equity in the residence as marital property. Likewise, the trial court did not divide the Freedom Mortgage loan as marital debt,

and Theriot retained the entire debt.  The $50,000 was from the Freedom Mortgage loan, which Theriot is responsible to repay.

{¶ 43} Accordingly, the trial court's finding that the $50,000 is marital property is against the manifest weight of the evidence, and we sustain Theriot's second assignment of error.

{¶ 44} Judgment reversed and remanded.  The trial court's award of spousal support and order that Theriot pay Hetrick $25,000 are vacated.  Upon remand, the trial court is instructed to enter an amended judgment of divorce consistent with this decision.

It is ordered that appellant recover from appellee costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MARY J. BOYLE, PRESIDING JUDGE

SEAN C. GALLAGHER, J., and
ANITA LASTER MAYS, J., CONCUR