[Cite as *Redding v. Cantrell*, 2022-Ohio-567.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

MADISON COUNTY

|  |  |  |
|---|---|---|
| SCOTT D. REDDING, | : | |
| Appellee and Cross-Appellant, | : | CASE NOS. CA2020-11-020<br>CA2020-11-021 |
| | : | |
| - vs - | : | O P I N I O N<br>2/28/2022 |
| | : | |
| MICHELE CANTRELL, | : | |
| Appellant and Cross-Appellee. | : | |

CIVIL APPEAL FROM MADISON COUNTY COURT OF COMMON PLEAS
Case No. CV20180164

Steven E. Hillman, for appellee and cross-appellant.

Peterson Conners LLP, and Jerry E. Peer, Jr., for appellant and cross-appellee.

**HENDRICKSON, J.**

{¶ 1}   Appellant, Michele Cantrell, appeals from the decision of the Madison County Court of Common Pleas determining her equitable interests in a home she shared with Scott Redding, her former romantic partner.  Redding has filed a cross-appeal from that same decision.  For the reasons detailed below, we affirm the trial court's decision.

{¶ 2}   On August 15, 2018, Redding filed a complaint against Cantrell alleging that Cantrell refused to transfer her interest in 4525 US 42, West Jefferson, Ohio ("Property")

and had unjustly enriched herself by $34,000. In his complaint, Redding alleged that he had "bought out" any interest that Cantrell had in the Property. Redding requested a declaration that Cantrell had no interest in the Property as well as reimbursement of $34,000 that he alleged that Cantrell received in excess of her interest in the Property. Cantrell answered denying the allegations in the complaint and filed a counterclaim seeking partition of the Property.

{¶ 3} On January 22, 2019, Cantrell filed a motion for summary judgment and requested a writ of partition ordering the sale of the Property. After reviewing the motion, the trial court granted partial summary judgment in favor of Cantrell and ordered a partition of the property.

{¶ 4} The trial court appointed a commissioner who appraised the Property in conformance with R.C. Chapter 5307. The commission report valued the Property at $530,000. The parties do not dispute the commissioner's appraisal value.

{¶ 5} A bench trial was held on July 9, 2020, concerning the parties' equitable interests. At the bench trial, the parties agreed that they were formerly in a romantic relationship, but had never married. The record reveals that in 2007, Linda Cantrell, Cantrell's mother, transferred four acres of land to Redding and Cantrell jointly with rights of survivorship.[1] Redding and Cantrell then entered into an agreement with a builder to construct a residence on the Property.

{¶ 6} According to both parties, home construction ended in 2009 and they began residing in the Property. Through the ensuing years, the parties made certain improvements, including the construction of a pole barn, the installation of a deck and fencing, and various interior home upgrades. Redding claimed that he paid for the upgrades

---

1. In the trial court's order for partition, the parties' survivorship interest was converted to tenants in common.

without assistance from Cantrell and that these upgrades had cost him approximately $93,000.

{¶ 7}   In November 2016, the parties ended their romantic relationship and Cantrell moved out of the Property.  Both sides agree that Redding has been the sole occupant of the Property since November 2016.

{¶ 8}   The parties do not dispute that in April 2017, Cantrell approached Redding about accessing some of the equity in the Property.  Redding had the Property appraised and learned that the Property had an equity valuation of $202,000.  Therefore, Redding and Cantrell agreed to obtain a $101,000 line of credit.  Pursuant to the terms of the agreement with the lender, Redding testified that he was required to pay off his existing credit card debt prior to disbursement of those funds.

{¶ 9}   On April 10, 2017, the parties refinanced the debt on the Property and executed a mortgage for $364,700.  Under the terms of the agreement, both parties were jointly and severally liable for the debt secured by the mortgage.  From the line of credit, approximately $32,000 was used to pay the balance of Redding's credit card debt.[2]  Cantrell then received $68,000.  Since November 2016, it is undisputed that Redding has paid the mortgage, taxes, and insurance on the Property.  Redding provided evidence that he paid $108,000 for the mortgage, taxes, and insurance after Cantrell left the Property.

{¶ 10} During the hearing, Redding argued that he should be credited with an offset for the $108,000 in payments he made on the Property for the 42 months since Cantrell moved out.  He also argued that he should be reimbursed for the approximate $93,000 in

---

2. There was also testimony that Redding also retained a small portion of the funds, approximately $800 for unspecified reasons.  There was little elaboration on this detail during trial and Cantrell only mentions it in passing in her briefing before this court.  Since there has been little effort to distinguish these sums, we will address them together.

improvements he made on the Property. To the contrary, Cantrell argued that she should receive credit for the approximate $32,000 used to pay off Redding's credit card debt and that she should be permitted to offset her liability for the mortgage, taxes, and insurance by one-half of the reasonable rental value of the Property during Redding's exclusive possession of the Property.

{¶ 11} After taking the matter under advisement, the trial court found that Redding was entitled an offset in the payments he solely made since Cantrell left the Property, and which Cantrell was obligated to pay under the terms of the mortgage agreement. The trial court determined that Cantrell elected to leave the Property and that merely leaving the Property did not extinguish her obligations on the home loan and associated expenses. For those same reasons, the trial court denied Cantrell's request for one-half of the reasonable rental value of the Property. However, since both parties were responsible for those expenses, the trial court found that Redding was only entitled to 50 percent of the obligation. Therefore, the trial court found that Redding was entitled to a $54,000 offset in accounting for the mortgage, taxes, and insurance.

{¶ 12} The trial court denied Redding's request for reimbursement for the funds or investments spent on the Property, including the initial building costs, the pole barn, deck, fencing, and interior home upgrades. The trial court stated that those contributions were made for the parties' mutual benefit as both he and Cantrell lived in the Property for many years. The trial court further noted that both parties were on all loan documents for the home construction and payments came from their joint checking account. As such, the court made the analogy that the improvements to the Property equated or were similar to marital property and should not be taken into account in the partition action. Finally, although the credit cards were solely in Redding's name, the trial court found that the

charges were accumulated during their relationship and were attributable to both parties. Therefore, the trial court denied Cantrell's request to offset the approximate $32,000 used to pay off Redding's credit cards received as part of the home equity loan.

{¶ 13} In total, the trial court found that, prior to equitable division between the parties, Redding was to receive: (1) $68,000 to match Cantrell's 2017 equity disbursement, and (2) $54,000 representing one-half of the mortgage payments made exclusively by Redding.[3] The trial court then awarded Cantrell attorney fees as a result of filing the successful partition action that she filed in her counterclaim.

{¶ 14} Since it had previously ordered partition of the Property, the trial court provided the parties with 14 days to elect to purchase the Property at the appraised value of $530,000. If both parties, or neither elected, the Property was to be sold at a Sheriff's sale. Upon the sale of the Property, the trial court ordered the mortgage to be paid in full. Thereafter, consistent with its equitable findings, the trial court ordered the first $122,000 to Redding along with one-half of any mortgage payments made solely by him after the trial court's order until the point of sale, then 50 percent to each party less costs, expenses, and Cantrell's reasonable attorney fees.[4] Cantrell appeals raising two assignments of error while Redding cross-appeals raising four cross-assignments of error.

{¶ 15} Assignment of Error No. 1:

{¶ 16} THE TRIAL COURT ERRED BY FAILING TO ATTRIBUTE PLAINTIFF'S CREDIT CARD DEBT SOLELY TO PLAINTIFF.

{¶ 17} In her first assignment of error, Cantrell argues the trial court erred by failing

3. The trial court also noted that if Redding continued to make exclusive payments on the mortgage, his interest will continue to increase by 50 percent of the payments made up until the point of sale.

4. There is no record of either party's election even though Redding, as he states in his fourth cross-assignment of error, requested ownership of the Property in his complaint and motion for summary judgment.

- 5 -

to attribute Redding's credit card debt solely to him. Because Cantrell maintains that she never used Redding's credit cards or contributed to the debt, she argues that the trial court should have deemed the payment of the credit card balance (from the home equity loan) as a distribution of his equity in the Property. We disagree.

{¶ 18} "Although the right to partition is controlled by statute, it has long been held to be essentially equitable in nature." *Bryan v. Looker*, 94 Ohio App.3d 228, 231 (3rd Dist. 1994), citing *Russell v. Russell*, 137 Ohio St. 153, 157 (1940). "'[W]here the rights of the parties are not clearly defined in law, broad equitable principles of fairness apply and will determine the outcome of each case individually.'" *Seese v. Clark*, 5th Dist. Delaware No. 15 CAE 10 0087, 2016-Ohio-3443, ¶ 23, quoting *In re Estate of Cogan*, 123 Ohio App.3d 186, 188 (8th Dist. 1997).

{¶ 19} "'In equitable matters, the court has considerable discretion in attempting to fashion a fair and just remedy.' * * * It has the power to fashion any remedy necessary and appropriate to do justice in a particular case." *Byers v. Robinson*, 10th Dist. Franklin No. 08AP-204, 2008-Ohio-4833, ¶ 57, quoting *McDonald & Co. Sec., v. Alzheimer's Assn.*, 140 Ohio App.3d 358, 366 (1st Dist. 2000). "The standard of review applicable to claims for equitable relief is abuse of discretion." *Id.* An abuse of discretion occurs when the trial court's judgment is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶ 20} During trial, the parties disputed whether Redding or Cantrell accumulated the relevant credit card debt. Cantrell maintained that the credit cards were in Redding's name and that she never used them or accumulated any debt on those accounts. Conversely, Redding claimed that the credit cards expenses were incurred jointly, and that Cantrell had accumulated much of the debt. The parties do not dispute that Redding was required to

pay off the balance of his credit cards prior to the disbursement of approximately $68,000 that went to Cantrell from the home equity loan.

{¶ 21} The trial court found that the associated credit card debts were accumulated during the parties' relationship and there was no credible evidence that the charges were solely attributable to one party. The court also found that the debts were ancillary to the issue at hand, which is each party's equitable interest in the Property.

{¶ 22} On appeal, Cantrell disputes the trial court's decision and cites her testimony that she denied using the credit cards or contributing to Redding's credit card debts. She further cites Redding's acknowledgment that the accounts were in his name and Cantrell was not listed as an authorized user on the accounts. Cantrell also argues that the debt incurred was unrelated to any improvement on the Property and is not properly part of any distribution of equity arising from the sale of the Property.

{¶ 23} Following review, we find the trial court did not abuse its discretion by attributing the credit card payments to both parties. Although we agree that credit card allocation is not an ordinary subject of a partition action, the record reveals that the credit cards were paid with proceeds from the 2017 home equity loan that became a lien on the Property. Thus, the trial court, pursuant to its equitable powers, may determine how to allocate debt between the parties. In this case, the trial court heard competing testimony concerning which party accumulated the debt and whether those sums should be attributable to both parties. The trial court found that the debts were accumulated by both parties, thereby finding Redding's testimony more credible. *Reed v. Triton Servs., Inc.*, 12th Dist. Clermont No. CA2018-07-049, 2019-Ohio-1587, ¶ 59 (the trial court is in the best position to resolve factual questions and evaluate witness credibility). This is especially true considering the parties resided together for seven years, maintained a single

household, and held a joint bank account. Additionally, the record reflects that Redding's credit card debt needed to be paid as part of the agreement with the lender that Cantrell voluntarily signed. The credit card debt was then paid from the line of credit proceeds which both parties were liable to pay pursuant to the terms of the loan agreement. At that point, Cantrell also became liable for the amount used to pay off the credit cards balances. There is no evidence that Cantrell objected to this arrangement or that she entered into an agreement with Redding making him solely responsible for this debt. Based upon this record, we find the trial court did not err or abuse its discretion in reaching this conclusion. The record supports the finding that both parties contributed to this debt and it therefore should be attributable to both parties. Cantrell is not entitled to a separate offset for those payments. As a result, we find Cantrell's first assignment of error is without merit and overruled.

{¶ 24} Assignment of Error No. 2:

{¶ 25} THE TRIAL COURT ERRED BY CREDITING APPELLEE-PLAINTIFF WITH ½ MORTGAGE PAYMENTS FROM THE DATE OF HIS SOLE OCCUPANCY BEGAN AND NOT CREDITING APPELLANT-DEFENDANT WITH ½ REASONABLE RENTAL VALUE OF PROPERTY.

{¶ 26} In her second assignment of error, Cantrell alleges the trial court erred by crediting Redding with 50 percent of the mortgage payments, and other associated expenses, while failing to offset that figure with 50 percent of the reasonable rental value of the Property. Based upon the evidence presented, we find that the trial court did not err in denying Cantrell's request.

{¶ 27} Initially, we agree with Cantrell that a cotenant out of possession is entitled to reasonable rental. As our sister district has explained:

A cotenant out of possession is entitled to his share of the reasonable rental value of the property exclusively used by the other cotenant. However, the party seeking rent bears the burden of establishing the reasonable rental value of the property in question.

*Burchfield v. Whaley*, 4th Dist. Hocking No. 00CA02, 2001-Ohio-2659, *7 (Citations omitted). *See Modic v. Modic*, 91 Ohio App.3d 775, 779, (8th Dist.1993).

{¶ 28} Ordinarily, testimony as to property value is not competent and admissible unless it is the professional opinion of an expert. *Worthington City Schools Bd. of Edn. v. Franklin Cty. Bd. of Revision*, 140 Ohio St.3d 248, 2014-Ohio-3620, ¶ 18. However, "Ohio law has long recognized that an owner of either real or personal property is, by virtue of such ownership, competent to testify as to the market value of the property." *Smith v. Padgett*, 32 Ohio St.3d 344, 347 (1987).

{¶ 29} The owner-opinion rule allows the property owner to testify primarily as a fact witness about his or her own property. *Worthington City Schools* at ¶ 19. "Consequently, the finder of fact 'is vested with wide discretion in determining the weight to be given to evidence and the credibility of witnesses which come before [it].'" *Omran v. Lucas*, 7th Dist. Mahoning No. 21 MA 0031, 2021-Ohio-4592, ¶ 75, quoting *Cardinal Fed. S. & L. Assn. v. Cuyahoga Cty. Bd. of Revision*, 44 Ohio St.2d 13 (1975), paragraph three of the syllabus. "[T]here is no requirement that the finder of fact accept [the owner's value] as the true value of the property." *WJJK Investments, Inc. v. Licking Cty. Bd. of Revision*, 76 Ohio St.3d 29, 32 (1996).

{¶ 30} During the bench trial, the parties agreed that Redding had been in sole possession of the Property since November 2016. Cantrell had the burden of establishing the reasonable rental value of the property during the period of time in which Redding was in sole possession of the property. The only evidence Cantrell presented to the trial court

was her own testimony that she believed the reasonable rental value of the Property was between $2,900 and $3,200 per month. There was no other evidence to support this valuation.

{¶ 31} We find the trial court did not err or abuse its discretion in making this determination. Although Cantrell was permitted to testify about the value of the Property under the owner-opinion rule, the trial court was free to give whatever weight it wanted to Cantrell's testimony and was not required to accept it. *See Omran*, 2021-Ohio-4592 at ¶ 75. With the evidence before it, the trial court did not abuse its discretion by denying Cantrell's request for a reasonable rental value credit. Once again, the trial court, as the trier of fact, was in the best position to weigh the evidence and assess Cantrell's credibility. Accordingly, we find Cantrell's second assignment of error is without merit and overruled.

{¶ 32} Cross-assignment of Error No. 1:

{¶ 33} THE TRIAL COURT ERRED IN EQUATING THE PROPERY AS MARITAL PROPERTY TO DEPRIVE THE APPELLANT OF HIS INDEPENDENT FUNDS USED IN THE CONSTRUCTION OF THE HOUSE.

{¶ 34} Cross-assignment of Error No. 2:

{¶ 35} THE TRIAL COURT ERRED IN NOT ORDERING THE REPAYMENT TO THE APPELLANT FOR THE $93,000 HE PAID FOR THE CONSTRUCTION OF THE HOUSE INDEPENDENT OF THE APPELLEE.

{¶ 36} Because they are interrelated, we will address Redding's first two cross-assignments of error together. In his first cross-assignment of error, Redding argues the trial court erred in equating the Property as "marital property" since the parties were never married. Redding maintains that this classification deprived him of funds that he used during the construction of the house. In his second cross-assignment of error, Redding

realleges the trial court erred by failing to credit him with $93,000 in improvements he made on the Property.

{¶ 37} The trial court found that Redding's expenses in building and improving the Property were for the parties' mutual enjoyment as both resided in the home for several years. The court then equated the payments as "marital property" and found that the payment should not be considered for partition.

{¶ 38} Based on our review of the record, we conclude the trial court did not err in its resolution of this issue. Redding is correct that the Property should not be treated as "marital property" in the domestic relations context; however, the trial court only referenced the division of "marital property" as an analogy in rejecting Redding's arguments. Rather, the trial court rejected Redding's claim that Redding should be credited for improvements he made to the land for the parties' mutual benefit. The record reveals that the parties lived on the Property for many years prior to their separation and that neither party benefited solely from the improvements. Redding's first and second cross-assignments of error are without merit and overruled.

{¶ 39} Cross-assignment of Error No. 3:

{¶ 40} THE TRIAL COURT ERRED BY NOT GIVING THE APPELLANT FULL CREDIT FOR THE $108,000 HE PAID FOR THE MORTGAGE, TAXES AND INSURANCE THEREBY PRESERVING THE PROPERTY IN DISPUTE.

{¶ 41} In his third cross-assignment of error, Redding argues the trial court erred by failing to award him full credit for the $108,000 he paid for the mortgage, taxes, and insurance after Cantrell left the Property and stopped making the mortgage payments.

{¶ 42} As addressed in more detail in Cantrell's second assignment of error, the trial court did not err or abuse its discretion concerning the parties' equitable interests in the

Property. In this case, the trial court awarded $54,000 for the mortgage, taxes, and insurance paid by Redding, which was half the total amount paid during this period. The trial court did not allow Cantrell to offset this amount with the reasonable rental value of the Property. In relation to this cross-assignment of error, we once again agree that the trial court's division was equitable and supported by the record. As correctly determined by the trial court, Redding was responsible for half of the expenses while Cantrell was responsible for the other half. Redding should not be permitted to recoup all of his expenses while also enjoying exclusive use of the Property. Therefore, the trial court did not err by only crediting Redding with a portion of the expenses he paid. Redding's third cross-assignment of error is meritless and overruled.

{¶ 43} Cross-assignment of Error No. 4:

{¶ 44} THE TRIAL COURT ERRED BY FINDING THAT THE APPELLANT DID NOT ELECT TO PURCHASE THE PROPERTY.

{¶ 45} In his fourth assignment of error, Redding argues that his election to purchase the Property for the appraised value may be discerned from the allegations he made in his complaint and in his arguments on summary judgment. However, the record reflects that the trial court's decision requested that the parties make an election 14 days following the issuance of its judgment entry. The record does not reflect that Redding made any such election. Redding's fourth cross-assignment of error is therefore overruled.

{¶ 46} Judgment affirmed.

M. POWELL, P.J., and S. POWELL, J., concur.