[Cite as *Vance v. Vance*, 2024-Ohio-1533.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## SENECA COUNTY

DAVID J. VANCE, JR.,

      PLAINTIFF-APPELLEE,

      v.

ENEDINA VANCE,

      DEFENDANT-APPELLANT.

CASE NO. 13-23-07

O P I N I O N

---

**Appeal from Seneca County Common Pleas Court
Domestic Relations Division
Trial Court No. 22-DR-0025**

**Judgment Affirmed**

**Date of Decision:  April 22, 2024**

---

**APPEARANCES:**

    *Robert P. Soto* **for Appellant**

    *John M. Kahler, II* **for Appellee**

**MILLER, J.**

{¶1} Defendant-Appellant, Enedina Vance ("Enedina"), appeals the March 16, 2023 judgment of the Seneca County Court of Common Pleas. Among other things, the judgment granted a divorce to the parties and designated Enedina the residential parent and legal custodian of the parties' three minor children. For the reasons that follow, we affirm.

## I. FACTS AND PROCEDURAL HISTORY

### A. Parties and Case Initiation

{¶2} Enedina and Plaintiff-Appellee, David Vance ("David"), were married on September 15, 2012. Three children were born as issue of their marriage, with the oldest being born in 2013.

{¶3} On January 28, 2022, David filed a Complaint for Divorce. He sought a divorce from Enedina, an equitable division of all of their assets and liabilities, that he be designated the primary residential parent of the children, that Enedina be ordered to pay child support, and other relief. The same day, David filed a motion for temporary orders.

{¶4} On February 1, 2022, then-magistrate Damon D. Alt ("Alt") issued a temporary restraining order that mutually restrained the parties from certain actions. On June 14, 2022, with both parties represented by counsel, the matter came before then-magistrate Alt for the issuance of temporary orders. He issued his related

decision on July 13, 2022. Enedina was designated the temporary residential parent and legal custodian of the parties' children, and David was granted supervised parenting time to take place at Patchworks House (an organization that coordinates and monitors visitation and exchange of children).

{¶5} On September 20, 2022, Enedina filed her Answer, in which she admitted the grounds for the divorce but asked that the Complaint for Divorce be dismissed, she be designated the custodial and residential parent of the parties' children, that David be ordered to pay child support, and that—if a divorce was granted—the court order an equitable division of the martial property and debts.

### B.     Evidentiary Hearing Presided Over by Then-Magistrate Alt

{¶6} On October 3, 2022, the matter proceeded to a final hearing before then-magistrate Alt on the contested Complaint for Divorce. Both parties were represented by counsel, both parties testified, and exhibits were introduced and admitted. The parties each testified that they were incompatible and wanted a divorce.

### 1.     Visitation

{¶7} Enedina testified that, prior to December of 2021, David was on the road all of the time for his job as a truck driver; he only would be home about once a month, apart from family vacations. She acknowledged David would talk to the kids by telephone on most of the days he worked. She testified David had a temper and there was an incident where David threatened to make one of their children "eat

teeth." She also testified about another incident where he left their six-year-old son in front of a restaurant at night while he went across the parking lot to put their daughter in a car seat. Enedina looked out the window of the restaurant and saw their son standing alone in the snow, so she ran out to him because, in her opinion, "anyone could have taken our son." (Oct. 3, 2022 Tr. at 77).

{¶8} David testified he had been paying child support through the court's temporary orders, and he agreed to pay child support if Enedina were granted custody of the children. He acknowledged that he had attempted suicide in December of 2021. Leading up to the attempt, he was in therapy for post-traumatic stress disorder, both he and Enedina were discussing whether to get a divorce, and he observed Enedina on the phone with another man. According to David, neither Enedina nor the children were in any danger from his suicide attempt; he had gone outside and tried to shoot himself, but the gun did not go off. Since the attempt, he had taken medication, followed the advice of his medical providers, and seen therapists—and he continued to see a therapist.

{¶9} David testified he had never physically harmed the children or put them in danger. According to David, the statement about "eat teeth" arose from an incident where the child was yelling at Enedina, David sat him down on the couch, and David told him "he was lucky that he wasn't eating teeth * * * because he was back-talking" to Enedina. (*Id.* at 97). David testified that he had a good relationship with the children; he played, wrestled, and had fun with them, up until the time he

separated from Enedina and moved out. He described himself as an overprotective parent. David now resides at his parents' home, where all of the children would have their own beds if they were to visit and stay overnight.

{¶10} During her testimony, Enedina proposed allowing David to have visitation through Patchworks House so that David could rebuild his relationship with the children, then implementing a gradual schedule for his visitation time after a few months.

### 2. Martial home

{¶11} Enedina testified that the parties owned their home in David's name, alone, although it was purchased together during the parties' marriage. David did not dispute that the home is marital property. (Oct. 3, 2022 Tr. at 23). Although Enedina, David, and their children all lived there during the marriage, David had not lived there since filing the Complaint for Divorce. David testified the house cost $60,000, while Enedina testified it cost $65,000. Both testified that the mortgage balance was approximately $51,000 to $52,000.

{¶12} According to Enedina, the house was worth less than $65,000; she had discussions with financial institutions about refinancing the house; and she wanted to refinance it in her own name so she and the children could continue to reside there. However, she had not had an appraisal done on the house and admitted she did not know how much it was worth or the amount of equity in the house. David testified he believed the house was worth more than the mortgage balance; he had

never spoken to anyone about refinancing the house; the house should be sold; and, after paying expenses, the sale proceeds should be divided equally with Enedina.

### 3. Spousal support

{¶13} Prior to filing the Complaint for Divorce, David had worked as an over-the-road truck driver, while Enedina did not work. Enedina had stayed at home and raised the children. In 2021, David earned approximately $75,000. However, he lost his job and, according to David, he was medically disqualified from using his commercial driver's license for at least a year, possibly indefinitely. David now works full-time at Advanced Auto Parts, earning approximately $28,080 annually. Enedina started working again in July of 2022. She now works two jobs and is in nursing school. Her annual income is approximately $43,888.00.

### 4. Retirement funds

{¶14} David testified that he no longer has any retirement accounts. He previously had a retirement account, but cashed it in completely because, at the time, he did not have a job and needed it to support himself after he separated from Enedina. He used the money for, among other things, payments for his vehicle, living expenses, and treatment. There was conflicting testimony regarding the amount of money that had been in the retirement account, with a range from approximately $17,000 to $23,000.

### C. Magistrate Alt Becomes Judge Alt, Who Issues the March 16, 2023 Judgment

{¶15} It is undisputed that, after the October 3, 2022 evidentiary hearing over which he had presided, then-magistrate Alt was elected judge of the Common Pleas Court of Seneca County. It also is undisputed that Alt did not issue a magistrate's decision following the evidentiary hearing.

{¶16} On March 16, 2023, now-judge Alt issued a Judgment Entry ruling on the Complaint for Divorce. Judge Alt issued the Judgment Entry as a judge, not as a magistrate. (*See* Mar. 16, 2023 Judgment Entry at 1, 21). The Judgment Entry contained findings of facts and conclusions of law. Among other things, it issued the following orders:

- David and Enedina are granted a divorce from one another on the grounds of incompatibility.

- The marital residence shall be sold. The proceeds from the sale shall be used to pay real estate taxes and sale costs, then used to pay all marital debts, then (if any proceeds remain) be split equally between David and Enedina.

- David shall receive any pension or retirement account in his name free and clear from any claim of Enedina, and Enedina shall receive any pension or retirement account in her name free and clear from any claim of David.

- Neither party shall receive any spousal support from the other. This portion of the decision is non-modifiable, and the Court shall not retain jurisdiction over spousal support.

- Enedina shall be designated the residential parent and legal custodian of the parties' children. David shall have parenting time with the children pursuant to the Seneca County local rules, "as long as [he] continues to receive treatment for mental health and follows his therapist's recommendations."

- David shall pay child support for the children in the amount of $362.41 per month.

(*Id.* at 14-16). This appeal followed.

## II. ASSIGNMENTS OF ERROR

{¶17} Enedina raises three assignments of error for our review:

**First Assignment of Error**

**The trial court's decision was against the manifest weight of the evidence.**

**Second Assignment of Error**

**The trial court failed to consider required factors in determining best interest of the child[ren].**

**Third Assignment of Error**

**The trial court improperly failed to provide a magistrate's decision and allow for an objection period.**

## III. DISCUSSION

{¶18} We proceed with addressing the assignments of error out of order, starting with the third assignment of error because it alleges procedural error.

### A. Third Assignment of Error

{¶19} Enedina argues the trial court erred in failing to provide a magistrate's decision, thus "improperly depriv[ing] [Enedina] of a right to file an objection." (Appellant's Brief at 14). Enedina contends that, because Alt presided over the final hearing as a magistrate, "the trial court [was] still required to go through the normal

process of issuing a Magistrate's Decision, allowing for" the parties to file any objections, and then ruling on any such objections. (*Id*. at 13).

**{¶20}** We disagree. "'[A] trial court may not be reversed for failure to comply with Civ.R. 53 unless the appellant shows [1] that the alleged error has merit and [2] that it prejudiced the appellant.'" *Performance Constr., Inc. v. Carter Lumber Co.*, 3d Dist. Hancock No. 5-04-28, 2005-Ohio-151, ¶ 14, quoting *Stout v. Stout*, 3d Dist. Union No. 14-01-10, 2001 WL 1240131, *3 (Oct. 17, 2001). First, Enedina has not shown that the trial court's March 16, 2023 order granting the parties a divorce was in contravention to Civ.R. 53. Second, even if Civ.R. 53 was violated, Enedina has not shown that she suffered any prejudice as a result of the former magistrate, who became the trial judge, issuing the order.

### 1.    No violation of Civ.R. 53

**{¶21}** Initially, we do not find the trial court violated any provision of Civ.R. 53. The Civil Rules do not specifically provide any procedure for courts of record to employ when a magistrate does not complete his or her duties as a result of the magistrate becoming the judge of the court. Further, nothing in Civ.R. 53 expressly prohibits the procedure employed in the relatively unique circumstances of this case.

**{¶22}** The purpose of a magistrate is to assist the trial court in managing its docket. *See* Civ.R. 53(C)(1); *Dixon v. O'Brien*, 7th Dist. Mahoning No. 09 MA 123, 2011-Ohio-3399, ¶ 19 (the scheme devised by Civ.R. 53 is a docket management tool to aid trial judges by permitting select matters to be resolved by

magistrates); *In re A.C.*, 5th Dist. Licking No. 23CA00040, 2023-Ohio-3072, ¶ 44 (a magistrate is an arm of the court, not a separate judicial entity with independent judicial authority and duties). A trial court is not required to refer a matter to a magistrate. Civ.R. 53(D)(1)(a) indicates that "[a] court of record *may*, for one or more of the purposes described in Civ.R. 53(C)(1), refer a particular case or matter or a category of cases or matters to a magistrate by a specific or general order of reference or by rule." (Emphasis added). If a trial court does refer a matter to a magistrate, then the court may limit the magistrate's powers as detailed in Civ.R. 53(D)(1)(b), remove a magistrate from a referred matter as authorized by Civ.R. 53(D)(6), or recall the referenced matter entirely and preside over the case itself. *See Ordway v. Ordway*, 9th Dist. Wayne No. 97CA006947, 1999 WL 1789, *1-2 (Dec. 30, 1998) (as a matter of judicial economy, the trial court is permitted to withdraw an issue or matter from a magistrate at any time). Consequently, a party in a court proceeding has neither the "right" to have a matter heard by a magistrate nor the "right" to a magistrate's decision.

{¶23} Judge Alt rendering the March 16, 2023 decision in his capacity as the newly-elected judge of the court was tantamount to him recalling the matter from the magistrate's docket. As the judge who assumed responsibility and control of the docket from retired Judge Michael P. Kelbley, this was entirely within Judge Alt's purview and the parameters of Civ.R. 53. "'A trial court retains its authority to decide an issue independent of the magistrate, as the grant of authority to a

magistrate does not affect a trial court's jurisdiction.'" *In re A.C.* at ¶ 43, quoting *Flynn v. Flynn*, 10th Dist. Franklin No. 03AP-612, 2004-Ohio-3881, ¶ 12. Accordingly, Judge Alt was able to act with full authority to decide the issues he heard as magistrate.

**{¶24}** Additionally, the reason for having a magistrate's decision supports this outcome. "Civ.R. 53 contemplates that the magistrate's decision will include a statement of the basis of his or her findings and recommendations in order to provide the trial court with sufficient information to make its own independent analysis of the decision's validity." *In re Bortmas*, 11th Dist. Trumbull No. 98-T-0147, 1999 WL 959842, *2 (Oct. 15, 1999). In other words, in its role of assisting the court, a magistrate's decision informs the trial judge of the relevant evidence the magistrate heard, the factual findings based on that evidence, and the magistrate's recommendations to the judge. Thus, the purpose of a magistrate's decision is to allow the trial court to make its own independent analysis of the decision's validity. *Erb v. Erb*, 65 Ohio App.3d 507, 509, 584 N.E.2d 807 (9th Dist.1989).

**{¶25}** In the instant case, there was no longer any need for a magistrate's decision once the magistrate became the judge. Because he presided over the divorce hearing, Judge Alt was undoubtedly able to make his own analysis. The need for a magistrate's report to assist the trial court in making an independent analysis is eliminated when the trial judge is the same person who presided over the

hearing, albeit as the court's former magistrate. The trial court's decision was not in contravention of Civ.R. 53.

### 2. Even if the trial court did not comply with Civ.R. 53, Enedina has not shown prejudice

{¶26} Even if the procedure employed by Judge Alt after assuming the trial bench was erroneous, Enedina has failed to show that she suffered any prejudice. In accordance with the two-part standard from *Performance Constr.* set forth above, the failure to issue a magistrate's decision does not call for automatic reversal. *E.g., Sladek v. Sladek*, 11th Dist. Portage No. 2011-P-0029, 2012-Ohio-529, ¶ 26-28 ("the magistrate held a hearing in this case but did not issue a Magistrate's Decision," yet appellant failed to show she "was prejudiced by the magistrate's failure to issue a decision"); *In re A.C.*, 2023-Ohio-3072, at ¶ 42 (affirming judgment even though "a magistrate presided over the two-day hearing but did not issue a Magistrate's Decision").

{¶27} Civ.R. 53(D)(3)(a)(i) mandates that a magistrate prepare a magistrate's decision regarding a referenced matter. However, given the particular circumstances that unfolded here involving the magistrate's election to the retiring judge's position, no prejudice resulted from the failure to strictly comply with the rule. This is *not* a situation where a magistrate presided over the evidentiary hearing and then a different person—who did not observe the witnesses or hear the testimony during the hearing—entered the judgment. This simple fact materially

distinguishes the instant case from the *Erb* case relied on by Enedina and from other cases where appellate courts have found prejudice because the trial court entered judgment without a magistrate's decision having been filed. Such cases are distinguishable because the person who presided over the evidentiary hearing in those cases was *not* the trial court judge who issued the judgment. *See Erb*, 65 Ohio App.3d at 508; *In re Bortmas*, 1999 WL 959842, at *2 (highlighting that "the trial court judge * * * did not, itself, conduct a hearing on the issues"). In line with the purpose of a magistrate's decision, the concern expressed by the appellate courts in *Erb* and *In re Bortmas* (i.e., the trial court having a lack of information to make its decision) simply does not apply here. Unlike those two cases, there *was* something on which Judge Alt "could base an independent decision." *Performance Constr.*, 2005-Ohio-151, at ¶ 16. As the judicial officer who presided over the evidentiary hearing, Judge Alt had his own personal observations of the testimony and credibility assessments of the witnesses on which he could rely. He did not suffer from the "lack of information" that existed in *Erb* and *In re Bortmas*. *Erb*, 65 Ohio App.3d at 510; *In re Bortmas*, 1999 WL 959842, at *2.

{¶28} Ultimately, the scenario that unfolded is no different than if the matter simply had never been referred to a magistrate: the trial court judge presides over the evidentiary hearing; the trial court judge issues a judgment; and—if they decide to do so—one or more of the parties appeals the judgment to the court of appeals. Enedina and David received equal treatment throughout this process. Neither had

an advantage over the other and neither was prejudiced by the process employed by Judge Alt. Enedina's loss in the trial court was not caused by any unfair advantage obtained by David as a result of the magistrate becoming the judge responsible for the case.

**{¶29}** Enedina contends she lost her "right" to file an objection to a magistrate's decision. Yet, the ability to object to a magistrate's decision is a procedure defined by the Civil Rules, and there is not a defined "right" to a magistrate's decision or to file objections to such a decision. This is merely a procedure created by Civ.R. 53(D)(3) to benefit the trial court in rendering a final decision. Ultimately, Enedina was not denied any "rights" but was afforded a full and fair hearing before a neutral jurist who heard the evidence and then, through the particular circumstances of this case, issued the final decision. Further, her ability to seek appellate review of that decision is self-evident.

**{¶30}** Finally, the judge's actions in this case were within the discretion afforded to trial courts in the disposition of domestic relations matters. "The court of common pleas including divisions of courts of domestic relations, has *full equitable powers and jurisdiction* appropriate to the determination of all domestic relations matters." (Emphasis added.) R.C. 3105.011(A). Additionally, Civ.R. 1(B) states, "These rules shall be construed and applied to effect just results by eliminating delay, unnecessary expense and all other impediments to the expeditious administration of justice."

**{¶31}** Judge Alt's decision to proceed and issue a judgment in his capacity as judge was a permissible, common sense approach to a relatively unique situation. The procedure he employed served to eliminate further delay and unnecessary expense for the parties. By comparison, it is unclear what remedy Enedina would have the trial court employ upon remand. Judge Alt has already heard and considered the evidence, so it would only create delay and expense for the parties if the case were retried. Further, as discussed above, the parties do not have the right to have the matter referred to a magistrate. Even if they did have this right, Judge Alt would then review the magistrate's decision for a final determination—on a matter he already determined. Such a redundancy is contrary to the stated objective of the Civil Rules.

**{¶32}** In conclusion, Enedina has shown neither a failure to comply with Civ.R. 53 nor that she suffered any prejudice. The third assignment of error is overruled.

### B. First Assignment of Error

**{¶33}** In the first assignment of error, Enedina makes three arguments to support her contention that the trial court's decision was against the manifest weight of the evidence. First, she alleges that, instead of ordering the marital home to be sold, "a more reasonable approach would have been for the court to take judicial notice of the parties' values as listed on their schedules and to allow Mrs. Vance to at least *attempt* to refinance the home, provide Mr. Vance with his due equity in the

home and allow the children to remain in the house." (Emphasis sic.) (Appellant's Brief at 4). Second, she alleges error in the trial court not requiring either party to pay spousal support to the other and making that portion of the judgment non-modifiable. (*Id.* at 5). Third, she alleges error because the trial court "did not divide Mr. Vance's retirement." (*Id.* at 7). We address each of these arguments separately.

### 1. Standard of review

{¶34} Appellate courts generally apply the abuse of discretion standard "when reviewing the propriety of a trial court's determination in a domestic relations case." *Booth v. Booth*, 44 Ohio St.3d 142, 144, 541 N.E.2d 1028 (1989) ("ordering the sale of the marital residence" is governed by the abuse of discretion standard); *see also Hardesty v. Hardesty*, 3d Dist. Allen No. 1-07-29, 2007-Ohio-6420, ¶ 17 ("a trial court's order granting or denying spousal support will not be reversed on appeal absent an abuse of discretion"). An abuse of discretion implies the trial court's attitude was unreasonable, arbitrary, or unconscionable. *Booth* at 144.

### 2. Martial home

{¶35} The parties do not dispute that the home is marital property. "In divorce proceedings, the court shall * * * divide the marital and separate property equitably between the spouses," in accordance with R.C. 3105.171. R.C. 3105.171(B). "If an equal division of marital property would be inequitable, the court shall not divide the marital property equally but instead shall divide it between

the spouses in a manner the court determines equitable." R.C. 3105.171(C)(1); *see also Ardrey v. Ardrey*, 3d Dist. Union No. 14-03-41, 2004-Ohio-2471, ¶ 21 ("the court should normally award each spouse his or her separate property and then distribute the marital estate equally unless an equal division would be inequitable"). In dividing marital property, the trial court is to "consider all relevant factors, including those set forth in" R.C. 3105.171(F). Additionally, the trial court has the authority to issue an order requiring the sale of any real property, with the proceeds from the sale "to be applied as determined by the court." R.C. 3105.171(J)(2). Thus, "[a] trial court has broad discretion to equitably divide marital property." *Golan-Elliott v. Elliott*, 3d Dist. Union No. 14-17-01, 2017-Ohio-8524, ¶ 29.

{¶36} Although Enedina testified she sought to transfer the property into her name alone, she did not demonstrate an ability to obtain financing. She also testified she had *not* "had an appraisal done on the house," did *not* "know how much [the house is] worth," and did *not* "know how much equity may or may not be in the house." (Oct. 3, 2022 Tr. at 91). In the Judgment Entry, the trial court explained that the house was marital property, the parties did not have any appraisals for the property, and the parties did not provide any testimony regarding the amount of equity (if any) in the property. (Mar. 16, 2023 Judgment Entry at 7). Therefore, the trial court decided the property should be sold and the proceeds used to pay real estate taxes, costs of sale, and marital debts, then divided equally if any proceeds remained.

**{¶37}** Enedina simply argues an alternative to selling the house would have been "a more reasonable approach"; she does not argue the trial court failed to comply with the law in making its decision.[1] (Appellant's Brief at 4). We do not find that the trial court abused its discretion. *See Booth*, 44 Ohio St.3d at 145; *Lee v. Lee*, 3d Dist. Shelby No. 17-01-05, 2001 WL 934430, *3 (Aug. 17, 2001) (affirming trial court's judgment ordering the marital home sold, the proceeds applied to the marital debt, and anything left over split between the parties). There is no requirement that the trial court allow a party to keep the marital home. *E.g., Booth*, 44 Ohio St.3d at 143 (despite husband's argument "that a more equitable approach would be to permit him to continue living in the marital residence and pay the wife" an amount of money, affirming trial court's "order that the marital residence be sold and the net proceeds be divided equally between the parties").

### 3. Spousal support

**{¶38}** Next, Enedina argues error in the trial court not requiring either party to pay spousal support. We first look to the meaning of spousal support:

> '[S]pousal support' means any payment or payments to be made to a spouse or former spouse, or to a third party for the benefit of a spouse or a former spouse, that is both for sustenance and for support of the spouse or former spouse. 'Spousal support' does not include any payment made to a spouse or former spouse, or to a third party for the

---

[1] Enedina also asserts the parties had filed affidavits with the trial court where the parties themselves valued the property. First, setting aside the fact that the property is in David's name only, the trial court is not required to accept the property owner's value as the true value of the property. *Redding v. Cantrell*, 12th Dist. Madison Nos. CA 2020-11-020 and CA 2020-11-021, 2022-Ohio-567, ¶ 29-31. More importantly, Enedina does not show how submitting a property owner's opinion of the martial residence's value leads to the conclusion that the trial court abused its discretion in deciding it was equitable to sell the house, apply the proceeds to debts and obligations, and evenly split any remaining proceeds.

benefit of a spouse or former spouse, that is made as part of a division or distribution of property or a distributive award under [R.C. 3105.171].

R.C. 3105.18(A). Significantly, the statute goes on to explain when the trial court should make a decision about awarding spousal support:

In divorce and legal separation proceedings, *upon the request of either party* and after the court determines the division or disbursement of property under section 3105.171 of the Revised Code, the court of common pleas may award reasonable spousal support to either party. During the pendency of any divorce, or legal separation proceeding, the court may award reasonable temporary spousal support to either party.

(Emphasis added.) R.C. 3105.18(B).

**{¶39}** Thus, a trial court should not award spousal support when neither party requested spousal support. R.C. 3105.18(B); *see also Vincent v. Vincent*, 9th Dist. Summit No. 15016, 1991 WL 231563, *2 (Nov. 6, 1991) (trial court erred in awarding wife spousal support because wife made no request for spousal support); *Theriot v. Hetrick*, 8th Dist. Cuyahoga No. 109364, 2020-Ohio-6995, ¶ 27 ("R.C. 3105.18(B) specifically states that to receive spousal support, a party must request it"). "Spousal support does not have to be specifically requested in the complaint or answer as long as it is specifically sought somewhere in the record." *Parker v. Parker*, 9th Dist. Summit No. 28189, 2017-Ohio-78, ¶ 12.

**{¶40}** In the Judgment Entry, the trial court explained David was not seeking any spousal support from Enedina, and Enedina did not testify that she was seeking any spousal support. Even so, the Judgment Entry states that Judge Alt reviewed

R.C. 3105.18 and the relevant provisions regarding awarding spousal support and found that neither party should receive any spousal support from the other. Neither party requested spousal support in the Complaint or Answer. Additionally, a search of the hearing transcript confirms spousal support was never requested.

**{¶41}** Enedina does not direct us to anywhere in the record that she requested spousal support. We find no error in the trial court not awarding Enedina spousal support.

### 4. Retirement funds

**{¶42}** Finally, Enedina argues that the "trial court erred when it did not divide [David's] retirement." (Appellant's Brief at 7). However, David testified that he no longer had any retirement accounts. Thus, there was no retirement for the trial court to divide. *See Hittle v. Hittle*, 2d Dist. Darke No. 08CA1735, 2009-Ohio-1286, ¶ 32 (trial court did not have a duty to divide retirement funds that husband withdrew and expended after the couple separated but before the final hearing; "the retirement fund was not property [husband] 'currently owned' on the dates of the final hearing"); *Rainer v. Rainer*, 7th Dist. Noble No. 11 NO 383, 2012-Ohio-6268, ¶ 12 ("[i]f the asset did not exist on the hearing date, it would not be part of the division of marital property"). The trial court ordered, prospectively, that each party shall receive any pension or retirement account in his or her name free from any claim of the other.

**{¶43}** This does not end our inquiry, however, because Enedina alleges financial misconduct by David regarding the retirement funds. *See, e.g.,* R.C. 3105.171(E)(4) (regarding financial misconduct); *Berish v. Berish*, 69 Ohio St.2d 318, 320, 432 N.E.2d 183 (1982) ("inequity would likely result if this court were to blindly * * * accept the position that if marital assets can disappear before the entry of the final divorce decree, the trial court loses all jurisdiction to divide and determine the equities therein since said assets and liabilities must be in existence at the moment of distribution"). Enedina contends that, given how David was living with his parents and allegedly "fail[ing] to pay marital expenses, [David] had no reason to immediately withdraw his retirement account other than to intentionally dissipate a marital asset before it would be divided." (Appellant's Brief at 8). She further alleges that, "[b]y intentionally wasting said retirement account, [David] has engaged in financial misconduct and the trial court should have factored that into its final decision including on other related issues (i.e. real estate and spousal support)." (*Id.*).

**{¶44}** We disagree. First, we note that Enedina did not allege financial misconduct at the final hearing. There also is no such allegation in her Answer, and she does not direct us to anything in the record showing she raised this particular argument to the trial court. Second, despite the trial court hearing testimony about the retirement funds and discussing it in the Judgment Entry's findings of fact, the trial court did not find any financial misconduct. *See Rainer* at ¶ 12 (rejecting

contention that the trial court did not consider potential financial misconduct in handling of a 401(k) account where the trial court had discussed the 401(k) account in its findings of fact).

{¶45} Third, the trial court highlighted that David "used those funds to pay for his attorney, living expenses, vehicle expenses, and to pay for his treatment." (Mar. 16, 2022 Judgment Entry). At the hearing, evidence about David's retirement account was part of a bigger picture regarding both David's *and* Enedina's use of money during their separation and leading up to their divorce. (*See id.* (discussing David's retirement account and Enedina's money transfers done without David's knowledge)). For example, Enedina acknowledged she had transferred $9,000 from a bank account in David's name to a savings account in her own name. (*See* Oct. 3, 2022 Tr. at 17-18). Although she was authorized to use the account (akin to David accessing his retirement account) and testified she used all of that money to support the children, Enedina did not consult with David before transferring that money and none of it was used for David's direct benefit. As another example, Enedina acknowledged that she alone used credit cards in David's name since the time David had filed for divorce. At the least, she charged approximately $3,000 on one card in the last few months for household expenses and bills, as well as another $3,000 or so on a different card since he filed for divorce. Yet, the trial court ordered that David be responsible for all debts in his name alone. In short, the record demonstrates the trial court considered the retirement funds as part of a broader view

of the evidence concerning the parties' finances, and it addressed the matter accordingly. *See Rainer*, 2012-Ohio-6268, at ¶ 13 (no error by trial court in deciding to exclude from the division of marital assets wife's 401(k) funds she had spent on living expenses and in not adjusting the division of marital property based on alleged financial misconduct).

{¶46} Fourth, the trial court did not err in failing to find David had engaged in financial misconduct and compensating Enedina accordingly. *Welch v. Welch*, 3d Dist. Union No. 14-14-05, 2015-Ohio-1595, ¶ 13 ("the trial court has discretion to determine whether a spouse engaged in financial misconduct"). "[T]he burden of proving financial misconduct is on the complaining party." *Id.* at ¶ 14. Under R.C. 3105.171(E)(4), "[i]f a spouse has engaged in financial misconduct, including, but not limited to, the dissipation, destruction, concealment, nondisclosure, or fraudulent disposition of assets, the court may compensate the offended spouse with a distributive award or with a greater award of marital property." "[A] trial court should not find that financial misconduct occurred under R.C. 3105.171 unless there is evidence" of some wrongdoing. *Welch* at ¶ 14. "Furthermore, the trial court will not apply R.C. 3105.171(E)(4) to compensate the offended spouse for the other's misconduct unless the evidence clearly shows 'that the offending spouse either profited from the alleged misconduct or intentionally defeated the other spouse's distribution of assets.'" *Id.*, quoting *Eggeman v. Eggeman*, 3d Dist. Auglaize No. 2-04-06, 2004-Ohio-6050, ¶ 24.

**{¶47}** The record supports that Enedina did not meet her burden of proving financial misconduct. The evidence did not show David was profiting or intentionally trying to harm Enedina by using the retirement funds. The evidence showed that David needed those funds to support himself because he did not have a job after separating from Enedina, and he used those funds for living expenses while Enedina used other funds in David's name to support herself and the children. We see no error by the trial court. *See Cooper v. Cooper*, 5th Dist. Licking No. 14 CA 100, 2015-Ohio-4048, ¶ 20-23 (rejecting appellant's suggestion that trial court had erred in not finding husband's use of per diem income for living expenses and out-of-town business expenses to be financial misconduct); *Welch*, 2015-Ohio-1595, at ¶ 15-16 (insufficient evidence to find financial misconduct by wife in spending her retirement funds, where funds were used for legitimate living expenses and other needs); *compare Holmes v. Holmes*, 6th Dist. Erie No. E-93-23, 1994 WL 68490 (Feb. 25, 1994) (affirming trial court's finding that husband engaged in financial misconduct by impulsively and voluntarily retiring and taking his pension at age 51 "with the intent of harming" the economic stability and future of his wife and children). Enedina's first assignment of error is overruled.

## C. Second Assignment of Error

**{¶48}** In the second assignment of error, Enedina vaguely argues that, "[d]espite listing the required factors, it does not appear that the trial court considered all of the required information and reached a decision that was not in the

best interest of the children." (Appellant's Brief at 11). Confusingly, Enedina's brief relies entirely on law involving custody decisions, yet she was the one designated the residential parent and legal custodian of the parties' three children. It appears Enedina actually takes issue with the trial court's decision on parenting time, i.e., visitation. She points out that David had previously been granted only *supervised* parenting time, but the subsequent March 16, 2023 Judgment Entry granted David parenting time pursuant to the local rules schedule, which provides for unsupervised parenting time. *See Braatz v. Braatz*, 85 Ohio St.3d 40, 43-44, 706 N.E.2d 1218 (1999) (explaining that R.C. 3109.04 "continues to govern custody rights, now referred to as 'parental rights and responsibilities,'" while "R.C. 3109.051, on the other hand, clearly governs decisions as to visitation").

### 1. Applicable law

**{¶49}** "R.C. 3109.051 is applicable to orders granting parenting time where no shared parenting plan is in place, as is the case here." *Fordham v. Fordham*, 3d Dist. Logan No. 8-08-17, 2009-Ohio-1915, ¶ 17 (affirming judgment that granted father unsupervised visitation with the parties' minor child). That statute provides:

> If a divorce * * * involves a child and if the court has not issued a shared parenting decree, the court * * * shall make a just and reasonable order or decree permitting each parent who is not the residential parent to have parenting time with the child at the time and under the conditions that the court directs, unless the court determines that it would not be in the best interest of the child to permit that parent to have parenting time with the child and includes in the journal its findings of fact and conclusions of law. Whenever possible, the order or decree permitting the parenting time shall ensure the opportunity

> for both parents to have frequent and continuing contact with the child, unless frequent and continuing contact by either parent with the child would not be in the best interest of the child.

R.C. 3109.051(A). In determining whether to grant parenting time, in establishing a specific parenting time schedule, and in determining other parenting time matters under R.C. 3109.051, the court must consider the factors listed in R.C. 3109.051(D). Among other things, those factors include the child's prior interaction and relationship with the parent, the geographic location of the parent's residence, the child's age, and the child's health and safety. A parent "need make no showing that there has been a change in circumstances in order for the court to revise his rights to visitation." *Braatz*, 85 Ohio St.3d at 45.

**{¶50}** "A trial court's establishment of a non-residential parent's visitation rights is within its sound discretion and will not be disturbed on appeal absent a showing of an abuse of discretion." *Fordham* at ¶ 18; *see also Braatz*, 85 Ohio St.3d at 45. "Furthermore, the trial court must exercise its discretion in the best interest of the child." *Fordham* at ¶ 18. "[T]he trier of fact is in the best position to observe the witnesses, weigh evidence, and evaluate testimony." *Id.* at ¶ 19. Therefore, a reviewing court should not reverse a decision simply because it holds a different opinion concerning the credibility of the witnesses and evidence submitted to the trial court. *Id.*

**2.    Analysis**

**{¶51}** Enedina requested she be named the residential parent and legal custodian and that David have supervised parenting time at Patchworks House to rebuild his relationship with the children.  In the Judgment Entry, after concluding Enedina should be designated the residential parent and legal custodian of the children, Judge Alt addressed the issue of parenting time.  He explained:

> R.C. 3109.051 governs orders granting parenting time or companionship or visitation rights.  The undersigned considered all of the factors, whether or not specifically mentioned herein, to determine whether parenting time with father is in the children's best interest.

(Mar. 16, 2023 Judgment Entry at 11).  He then proceeded with a relatively detailed examination of the issue, expressed his concerns about David and the children's safety and welfare, and conditioned the parenting time accordingly.

**{¶52}** Thus, the record reflects that the trial court considered the R.C. 3109.051(D) factors, including that the Judgment Entry specifically states that the court considered them.  *See Benschoter v. Benschoter*, 5th Dist. Licking No. 17-CA-25, 2017-Ohio-8827, ¶ 56 (rejecting contention that the trial court did not appropriately consider and review all relevant factors, where the trial court's judgment entry stated it considered all factors in R.C. 3109.051, and there was no evidence that the trial court did not consider those factors).  Among other things, the trial court heard testimony from both parents regarding David's interactions with the children, the circumstances of his suicide attempt, his treatment, his living

arrangements, and his explanation of the two incidents Enedina had raised concerning the children's safety. Given the applicable standard of review and how Judge Alt was in the best position to observe the witnesses, weigh evidence, and evaluate testimony, we see no error in the trial court's decision. *See, e.g., Fordham*, 2009-Ohio-1915, at ¶ 1, 16 (despite evidence of husband's domestic violence against wife, violations of a civil protection order, employment issues, no established suitable accommodations, and lack of contact with the child for months, affirming trial court's decision to allow husband unsupervised supervision where the record contained evidence he attended psychological counseling, was treated with medication, and the guardian ad litem did not have concerns husband would harm the child). Accordingly, Enedina's second assignment of error is overruled.

## IV. CONCLUSION

{¶53} For the foregoing reasons, Enedina's assignments of error are overruled. Having found no error prejudicial to the appellant in the particulars assigned and argued, we affirm the judgment of the Seneca County Court of Common Pleas.

***Judgment Affirmed***

**ZIMMERMAN, J., concurs.**

**WALDICK, J., dissents.**

{¶54} For the reasons that follow, I respectfully dissent in the disposition of the third assignment of error and would reverse and remand the case for further proceedings.

{¶55} In the third assignment of error, Enedina argues that the trial court erred in failing to file a magistrate's decision and therefore deprived the parties of an objection period prior to the trial court entering final judgment in the case, in violation of Civ.R. 53.

{¶56} As the majority opinion accurately notes, the final divorce hearing in this case was held on October 3, 2022, with Magistrate Damon D. Alt presiding at that hearing. At that time, Alt served as a magistrate for then Judge Michael P. Kelbey. On March 16, 2023, the trial court filed the "Judgment Entry (Final Divorce Hearing)". That judgment entry, which granted David's complaint for divorce and entered final orders relating to the division of marital assets and marital debt, spousal support, child support, and other relevant issues, was signed by Damon D. Alt, but in his new capacity as the judge in the trial court. As Enedina sets forth in her merit brief, Alt had been elected to the bench and took office as judge sometime in the period between the evidentiary hearing in this case on October 3, 2022 and the issuance of the March 16, 2023 final judgment entry.

{¶57} Civ.R. 53 provides for the referral of certain legal disputes to magistrates. Pursuant to Civ.R. 53(D)(3)(a)(i), "[s]ubject to the terms of the relevant reference, a magistrate shall prepare a magistrate's decision respecting any matter referred under Civ.R. 53(D)(1)."

{¶58} With respect to the form, filing, and service of a magistrate's decision, Civ.R. 53(D)(3)(a)(iii) provides:

> A magistrate's decision shall be in writing, identified as a magistrate's decision in the caption, signed by the magistrate, filed with the clerk, and served by the clerk on all parties or their attorneys no later than three days after the decision is filed. A magistrate's decision shall indicate conspicuously that a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion as required by Civ.R. 53(D)(3)(b).

{¶59} With respect to objections to a magistrate's decision, Civ.R. 53(D)(3)(b) provides:

> (i) *Time for Filing*. A party may file written objections to a magistrate's decision within fourteen days of the filing of the decision, whether or not the court has adopted the decision during that fourteen-day period as permitted by Civ.R. 53(D)(4)(e)(i). If any party timely files objections, any other party may also file objections not later than ten days after the first objections are filed. If a party makes a timely request for findings of fact and conclusions of law, the time for filing objections begins to run when the magistrate files a decision that includes findings of fact and conclusions of law.

(ii) *Specificity of Objection*. An objection to a magistrate's decision shall be specific and state with particularity all grounds for objection.

(iii) *Objection to Magistrate's Factual Finding; Transcript or Affidavit*. An objection to a factual finding, whether or not specifically designated as a finding of fact under Civ.R. 53(D)(3)(a)(ii), shall be supported by a transcript of all the evidence submitted to the magistrate relevant to that finding or an affidavit of that evidence if a transcript is not available. With leave of court, alternative technology or manner of reviewing the relevant evidence may be considered. The objecting party shall file the transcript or affidavit with the court within thirty days after filing objections unless the court extends the time in writing for preparation of the transcript or other good cause. If a party files timely objections prior to the date on which a transcript is prepared, the party may seek leave of court to supplement the objections.

(iv) *Waiver of Right to Assign Adoption by Court as Error on Appeal*. Except for a claim of plain error, a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party has objected to that finding or conclusion as required by Civ.R. 53(D)(3)(b).

**{¶60}** Finally, Civ.R. 53(D)(4) governs the actions of trial courts with regard to magistrates' decisions, and provides:

(a) *Action of Court Required*. A magistrate's decision is not effective unless adopted by the court.

(b) *Action on Magistrate's Decision*. Whether or not objections are timely filed, a court may adopt or reject a magistrate's decision in whole or in part, with or without modification. A court may hear a previously-referred matter, take additional evidence, or return a matter to a magistrate.

(c) *If No Objections Are Filed*. If no timely objections are filed, the court may adopt a magistrate's decision, unless it determines that

there is an error of law or other defect evident on the face of the magistrate's decision.

(d) *Action on Objections*. If one or more objections to a magistrate's decision are timely filed, the court shall rule on those objections. In ruling on objections, the court shall undertake an independent review as to the objected matters to ascertain that the magistrate has properly determined the factual issues and appropriately applied the law. Before so ruling, the court may hear additional evidence but may refuse to do so unless the objecting party demonstrates that the party could not, with reasonable diligence, have produced that evidence for consideration by the magistrate.

(e) *Entry of Judgment or Interim Order by Court*. A court that adopts, rejects, or modifies a magistrate's decision shall also enter a judgment or interim order.

(i) *Judgment*. The court may enter a judgment either during the fourteen days permitted by Civ.R. 53(D)(3)(b)(i) for the filing of objections to a magistrate's decision or after the fourteen days have expired. If the court enters a judgment during the fourteen days permitted by Civ.R. 53(D)(3)(b)(i) for the filing of objections, the timely filing of objections to the magistrate's decision shall operate as an automatic stay of execution of the judgment until the court disposes of those objections and vacates, modifies, or adheres to the judgment previously entered.

(ii) *Interim Order*. The court may enter an interim order on the basis of a magistrate's decision without waiting for or ruling on timely objections by the parties where immediate relief is justified. The timely filing of objections does not stay the execution of an interim order, but an interim order shall not extend more than twenty-eight days from the date of entry, subject to extension by the court in increments of twenty-eight additional days for good cause shown. An interim order shall comply with Civ.R. 54(A), be journalized pursuant to Civ.R. 58(A), and be served pursuant to Civ.R. 58(B).

{¶61} Thus, under Civ.R. 53(D)(3), a party has fourteen days to file objections to a magistrate's decision with the trial court. *See, also*, *Performance Const., Inc. v. Carter Lumber Co.,* 3d Dist. Hancock No. 5-04-28, 2005-Ohio-151, ¶ 11. If such objections are timely filed, the trial court is required to rule on those objections. *Id*., citing *Garwood v. Garwood,* 3rd Dist. No. 15–03–14, 2004–Ohio–2362, ¶ 9. However, if a party fails to timely file such objections, then any error in the trial court's adoption of any of the magistrate's findings of fact or conclusions of law is deemed waived and cannot be assigned as error on appeal. *Id*., citing Civ.R. 53; *Garwood* at ¶ 9.

{¶62} Notwithstanding the mandatory dictates of Civ.R. 53, "[a] trial court may not be reversed for failure to comply with Civ.R. 53 unless the appellant shows that the alleged error has merit and that it prejudiced the appellant." *Stout v. Stout,* 3rd Dist. Union No. 14–01–10, 2001 WL 1240131, *3 (Oct. 17, 2001), citing *Skaggs v. Skaggs*, 3rd Dist. Marion No. 9–97–18, 1997 WL 746443 (Dec. 4, 1997), quoting *In re Estate of Hughes*, 94 Ohio App.3d 551, 554, 641 N.E.2d 248 (9th Dist.1994).

{¶63} The case law analyzing the issue of prejudice stemming from a trial court's noncompliance with Civ.R. 53 generally focuses on two issues: (1) whether the violation prevented the appellant from having the opportunity to file objections to the magistrate's decision; and (2) whether the trial court was able to conduct an independent analysis of the magistrate's decision. *See In re Estate of Hughes,* 94 Ohio App.3d at 555, 641 N.E.2d 248; *Swain v. Swain*, 11th Dist. Summit No. 20048,

2000 WL 179472 (Nov. 22, 2000); *In re Bortmas*, 11th Dist. Trumbull No. 98–T–0147, 1999 WL 959842 (Oct. 15, 1999); *Erb v. Erb*, 65 Ohio App.3d 507, 510, 584 N.E.2d 807 (9th Dist.1989).

**{¶64}** "The clear import of Civ.R. 53 * * * is to provide litigants with a meaningful opportunity to register objections to the [magistrate's] report and the failure to provide such an opportunity to object is prejudicial error." *In re Estate of Hughes, supra*, at 555, citing *Pinkerson v. Pinkerson*, 7 Ohio App.3d 319, 455 N.E.2d 693 (1st Dist.1982), syllabus. Appellate courts have also found prejudice in factual situations where the trial court entered judgment without a magistrate's decision having been filed. *In re Bortmas*, *supra*; *Erb*, *supra*. In those cases, the finding of prejudice stemmed from the fact that the trial court had nothing upon which it could base an independent review of the magistrate's recommendations.

**{¶65}** In the instant case, the trial court failed to comply with the procedures set forth in Civ.R. 53 after the case was initially referred for hearing, and was heard, by a magistrate. While the magistrate who heard the case was the same person who subsequently, as the judge, entered judgment on the issues before the court, I would find that employing that process nonetheless served to deprive the parties of several aspects of the process due them under Civ.R. 53. One, the parties lost the perogative to lodge objections to the magistrate's findings and conclusions because, in the absence of a magistrate's decision ever having been issued, no such findings were made. More importantly, the parties were deprived of the right to *independent*

review by the trial court of the magistrate's determinations. Finally, pursuant to the rule, the parties' failure to file objections served to waive their right to claim error on appeal with respect to the trial court's final judgment.

{¶66} Accordingly, I would hold that Enedina has established that she was prejudiced by the trial court's noncompliance with Civ.R. 53. I would therefore sustain the third assignment of error, find that the first and second assignments are rendered moot, and reverse and remand the matter for further proceedings.

**/hls**